OPINION
{¶ 1} Defendant-appellant, Mark Cravens, appeals pro se a decision of the Warren County Court of Common Pleas, Domestic Relations Division, denying his motions for legal custody of the parties' youngest child and to terminate his child support and spousal support obligations. *Page 2 
 {¶ 2} The parties have three children, a son who is emancipated, and two daughters, Megan (born in June 1989 and now emancipated) and Morgan (born in June 1997). By divorce decree filed on February 10, 2005, plaintiff-appellee, Lisa Cravens, was granted custody of Megan and Morgan, and Mark was ordered to pay child and spousal support. Pursuant to the divorce decree, spousal support was to terminate upon Lisa's death, remarriage, or cohabitation with an unrelated adult male. In 2006, Mark moved for and was granted legal custody of Megan, age 17. Mark subsequently moved for legal custody of Morgan, age nine, and to terminate his child and spousal support obligations. The motion alleged that Lisa had been repeatedly interfering with his parenting time and that she was cohabitating with Steve Tusing, her boyfriend.
 {¶ 3} On September 20, 2007, the magistrate denied Mark's motion for custody of Morgan and to terminate his child support obligation on the ground that the change of circumstances alleged by Mark did not warrant modifying the existing custody order. The magistrate denied Mark's motion to terminate his spousal support obligation on the ground that Lisa's relationship with Tusing was one of boyfriend-girlfriend that did not rise to cohabitation.
 {¶ 4} In other matters, the magistrate (1) found that Lisa did not intentionally withhold Mark's visitation or interfered in his communication with Morgan, but admonished Lisa to give adequate time to Morgan to talk to Mark on the phone; (2) found that Lisa sold the parties' 1993 van at fair market value, as previously ordered; (3) for purposes of child support recalculation, found that Mark's annual income was $87,500; Lisa's annual income was $20,462.61; and Mark and Lisa paid two percent and one percent respectively in local income tax; and (4) although requested by the *Page 3 
parties, declined to interview Megan and Morgan. Mark filed 17 objections to the magistrate's decision which were overruled by the trial court on February 1, 2008.
 {¶ 5} This appeal follows, raising three assignments of error which will be considered out of order.
 {¶ 6} Mark's assignment of error No. 3:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF [FATHER]."
 {¶ 8} In this assignment of error, Mark challenges three determinations by the trial court and argues they were made with judicial arrogance. Specifically, Mark challenges (1) the trial court's determination that Lisa and Tusing are not cohabitating but are merely living together; (2) the trial court's calculation of his income based on his annual income rather than his average gross income for the last three years, as was done in the divorce decree; and (3) the trial court's finding that Mark's local income tax is two percent when the divorce decree used a 2.1 percent local income tax.
 {¶ 9} Mark first challenges the trial court's finding that Lisa and Tusing were not cohabitating.
 {¶ 10} It is well-established that under proper circumstances, cohabitation can constitute grounds for termination of spousal support awards. Thomas v. Thomas (1991), 76 Ohio App.3d 482, 485. The term "cohabitation" contemplates a relationship that approximates or is the functional equivalent of a marriage. Piscione v. Piscione (1992),85 Ohio App.3d 273, 275. Cohabitation "requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour so as to be the functional equivalent of a marriage." Barrett v. Barrett (June 10, 1996), Butler App. No. CA95-06-110, at 21. *Page 4 
Thus, cohabitation requires more than simply living together and having sexual relations; there must be a showing of mutual financial support. See Aldridge v. Aldridge (Sept. 21, 1998), Preble App. No. CA97-09-025.
 {¶ 11} Whether a particular relationship or living arrangement constitutes cohabitation is a question of fact best determined by the trial court on a case-by-case basis. Moell v. Moell (1994),98 Ohio App.3d 748, 752. An appellate court will not overturn the judgment of a trial court with respect to a determination of cohabitation if it is supported by some competent, credible evidence going to all the essential elements of the case. Piscione, 85 Ohio App.3d at 276. A trial judge has the best opportunity to observe the demeanor and assess the credibility of each witness. See Tomes v. Tomes, Butler App. No. CA2003-10-264, 2005-Ohio-1619.
 {¶ 12} Lisa and Tusing started dating in the spring of 2005. At the time, Tusing had been living with his mother for a few years; he moved into his own apartment in October 2006. Mark testified that from June 22, 2005 to November 19, 2005, he drove by Lisa's home before going to work early in the morning; during that period, he personally observed Tusing's vehicle parked outside Lisa's home 113 days out of 129 days. Lisa and Tusing admitted that if Tusing's vehicle was at her home, then Tusing was there as well. However, Lisa disputed Mark's testimony that Tusing's vehicle was there 113 days during the June — November 2005 period because Tusing "wasn't there that much." Further, Tusing "never moved out [of her house] because he never lived there." Tusing's mother testified that during the June — November 2005 period, Tusing was away from her home two to three nights a week.
 {¶ 13} Lisa testified that in 2005, including during the June — November period, *Page 5 
she at times paid her rent and bills with cash or money orders because her bank account was overdrawn and she could not write checks against the account. Further, from October 2005 to January 2006, she had no checking account and operated strictly on a cash basis. Tusing testified that he does not have a checking or bank account and pays his bills and expenses solely with cash or money orders. Lisa denied Tusing has helped her financially and testified only her family helps her financially at times.
 {¶ 14} A surveillance videotape conducted by a private investigator hired by Mark shows Tusing driving Lisa's car, taking garbage cans into Lisa's garage, carrying groceries, and staying at Lisa's home while Lisa runs errands. Tusing testified he has at times driven Lisa's car, he does not buy groceries for Lisa or pay for them, but he has occasionally bought groceries and cooked dinner for Lisa and her daughters.
 {¶ 15} Both Lisa and Tusing testified that (1) Tusing does not have a key to her house as Lisa did not want him to have a key; however, she has loaned him her key once or twice; (2) Tusing does not receive his mail at her house and does not have any property at her house; (3) they do not have joint bank accounts, joint debts, or joint bills; and (4) Tusing has never paid her rent or bills. Tusing further testified he has never given money to Lisa and she, in turn, has never given him money. He has occasionally bought gum or soda for Megan and Morgan. Lisa testified that only her name is on her bank account and that she pays all of her bills and expenses. Melissa Amburgy has a daughter who is friends with Morgan. According to Amburgy, Lisa told her once that Lisa and Tusing helped each other out financially. Lisa denied she would have talked to Amburgy about her finances or personal life.
 {¶ 16} Tusing has two children. Testimony at the hearing indicated that his *Page 6 
children have spent some time with Lisa's daughters and once in a while have spent the night at Lisa's house; both families have done activities on a social basis together; and Tusing's mother occasionally receives free tickets to the Newport Aquarium or King's Island and has given them to Tusing who in turn gave them to Lisa.
 {¶ 17} After carefully reviewing the record, we find that the trial court's determination that Lisa and Tusing are merely boyfriend and girlfriend and do not cohabitate is supported by competent, credible evidence. There is no evidence in the record of financial support flowing between Lisa and Tusing so as to constitute the functional equivalent of a marriage. Thus, Mark failed to prove that Lisa was cohabitating with Tusing. See Marley v. Marley (Oct. 13, 1997), Butler App. No. CA97-03-072; Aldridge, Preble App. No. CA97-09-025. The trial court had the best opportunity to view the demeanor and credibility of each witness, and this court will not second-guess its judgment. SeeTomes, 2005-Ohio-1619. Absent cohabitation, the trial court properly denied Mark's motion to terminate his spousal support obligation.
 {¶ 18} Mark next challenges the trial court's calculation of his income based on his annual income rather than his average gross income for the last three years, as was done in the divorce decree. According to Mark, R.C. 3119.022 "recommends to average annual gross income over a reasonable time. There has been no change of circumstances, so there is no logical reason to change the method of calculation." In ruling on Mark's objections, the trial court stated that Mark's income of $87,500 was based on his own testimony; the use of his annual gross income was consistent with R.C. 3119.022; and since his income was growing, there was no reason to use an average. *Page 7 
 {¶ 19} R.C. 3119.022 requires parents to list as income their "[a]nnual gross income from employment or, when determined appropriate by the court or agency, average annual gross income from employment over a reasonable period of years." Thus, R.C. 3119.022 allows the use of average gross annual income only when deemed appropriate by the court. We find no abuse of discretion in the trial court's use of Mark's annual income rather than his average gross income for the last three years.
 {¶ 20} Finally, Mark challenges the trial court's decision to use two percent as Mark's local income tax rather than the 2.1 percent local income tax used in the divorce decree. In ruling on Mark's objections, the trial court found that Mark "failed to present evidence to the Magistrate of his local income tax. It is his obligation to give the Magistrate such information."
 {¶ 21} In a decision written prior to the divorce decree, the trial court noted that Lisa "pays local income tax to the city of Lebanon" and Mark "pays 2.1% local income tax." During the hearing on Mark's motions, while testifying about her annual income, Lisa testified she pays "Lebanon Local Tax." By contrast, when testifying about his annual income, Mark never testified about his local income tax. Thus, Mark failed to present evidence of his local income tax. We find no abuse of discretion in the trial court's decision to use two percent as Mark's local income tax for purposes of child support recalculation.
 {¶ 22} Mark's third assignment of error is overruled.
 {¶ 23} Mark's assignment of error No. 1:
 {¶ 24} "THE TRIAL COURT DISCRIMINATED AGAINST FATHER WITH REGARD TO CHILD CUSTODY." *Page 8 
 {¶ 25} In this assignment of error, Mark argues the trial court discriminated against him with regard to child custody by denying his motion for custody of Morgan even though evidence was provided (1) of Lisa's illegal activity of writing bad checks repeatedly; (2) of her financial mismanagement; (3) she once let Megan drive Lisa's car with Tusing and an open bottle; (4) there were alcohol and cigarette smoking in Lisa's house; (5) Lisa did not take Megan and Morgan to church; and (6) Lisa repeatedly belittled Mark in the presence of their daughters.
 {¶ 26} Civ. R. 53(D)(3)(b) governs the filing of objections to a magistrate's decision and provides:
 {¶ 27} "(ii) An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.
 {¶ 28} "* * *
 {¶ 29} "(iv) Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)."
 {¶ 30} It is well-established that if a party fails to object to a conclusion of law or finding of fact issued by a magistrate, pursuant to Civ. R. 53, the party is precluded from raising the issues on appeal. SeeKoeller v. Koeller, Preble App. No. CA2006-04-009, 2007-Ohio-2998.
 {¶ 31} Mark failed to raise the foregoing six issues in his objections to the magistrate's decision and does not claim plain error here. He is therefore precluded *Page 9 
from raising these issues on appeal.[1] Civ. R. 53(D)(3)(b)(ii), (iv);Marder v. Marder, Clermont App. No. CA2007-06-069, 2008-Ohio-2500.
 {¶ 32} Mark also argues the trial court discriminated against him in denying his motion for custody of Morgan because the trial court refused to interview Megan and Morgan; refused to let Mark testify about "concerns regarding the environment that the children live in with Mother;" ignored evidence Lisa had interfered with his parenting time; and ignored an important change of circumstances, the fact that Lisa and Tusing were either cohabitating or living together without being married. Mark, who is remarried to a "wonderful lady," contends that he "could provide a stable, Christian home for Morgan," whereas Lisa's lifestyle is "forcing the children to follow their Mother's pattern of boyfriend after boyfriend."
 {¶ 33} R.C. 3109.04(E)(1)(a) governs the modification of an existing custody arrangement, and provides that "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent, * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and [as applicable to the case at bar] [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment *Page 10 
to the child." R.C. 3109.04(E)(1)(a)(iii).
 {¶ 34} When applying the statute, a trial court "may not modify a prior decree allocating parental rights and responsibilities unless itfirst finds that a change has occurred in the circumstances of the child or the child's residential parent; and then, upon further inquiry, the court finds that the modification is in the child's best interest."Terry L. v. Eva E., Madison App. No. CA2006-05-019, 2007-Ohio-916, ¶ 11. (Emphasis sic.) A change of circumstances "must be a change of substance, not a slight or inconsequential change." Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. In determining whether a change of circumstances has occurred, a trial judge, as the trier of fact, must be given wide latitude. Id. at paragraph two of the syllabus.
 {¶ 35} A trial court's determination of whether a change of circumstances has occurred falls within the discretion of the trial court and will not be disturbed absent an abuse of discretion. Id. An abuse of discretion is more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 36} As noted earlier, the magistrate found that the change of circumstances alleged by Mark did not warrant modifying the existing custody order. The trial court upheld the denial of Mark's motion for change of custody of Morgan. Upon thoroughly reviewing the record, we cannot say that the trial court's finding that there was no change of circumstances was arbitrary, unreasonable, or unconscionable.
 {¶ 37} Mark essentially argues (and believes) he would provide a better environment for Morgan. However, an existing custody order will not be modified merely *Page 11 
because the moving parent can provide a better environment. See Wyss v.Wyss (1982), 3 Ohio App.3d 412. With regard to Mark's cohabitation argument, we have already found that competent, credible evidence supported the trial court's finding that Lisa and Tusing did not cohabitate. Further, Ohio courts have held the fact that romantic partners live together without being married does not, in and of itself, warrant a change of custody. Rather, their conduct must be shown to have an adverse impact on the child. See Kraus v. Kraus (1983),10 Ohio App.3d 63; Whaley v. Whaley (1978), 61 Ohio App.2d 111. No evidence was presented that the relationship between Lisa and Tusing has an adverse impact on Morgan. In fact, Mark testified that Morgan is a happy child who is doing well in school. Morgan's various absences from school were all excused. Lisa testified that Morgan was doing very well at her house. The relationship between Lisa and Tusing therefore does not constitute a change of circumstances.
 {¶ 38} Mark also contends the trial court ignored evidence of Lisa's interference with his parenting time, and refused to let him testify about "concerns regarding the environment that the children live in with Mother." We disagree. The magistrate was "not convinced" that Lisa "intentionally withheld" Mark's parenting time or interfered in his communication with their daughters; nonetheless, it admonished Lisa to give their daughters adequate time to talk to Mark on the phone. In ruling on Mark's objections, the trial court agreed that Lisa's interference with phone calls was not intentional but echoed the magistrate's admonishment that Megan and Morgan be permitted adequate time to talk to Mark. Upon reviewing the record, the magistrate's decision, and the trial court's decision on Mark's objections, we find that Lisa's alleged interference with Mark's parenting time was considered; however, it did not constitute a change of *Page 12 
circumstances. We find no abuse of discretion.
 {¶ 39} With regard to his contention the trial court refused to let him testify about his concerns, Mark fails to direct us to instances in the record where he was so prevented. Under App. R. 16(A)(7), an Mark must indicate to the appellate court specifically where the trial court's alleged errors may be located in the transcript. It is not the duty of an appellate court to search the record for evidence to support an Mark's argument as to any alleged error. See State v. Gulley, Clermont App. No. CA2005-07-066, 2006-Ohio-2023; Tisdale v. 2MProperties, Inc., Cuyahoga App. No. 85851, 2005-Ohio-5447.
 {¶ 40} Finally, Mark contends the trial court discriminated against him in denying his motion for custody of Morgan because the court refused to interview Megan and Morgan. In ruling on Mark's objections, the trial court stated that once the magistrate found there was no change of circumstances, "it was unnecessary to determine best interest of the children and interview same." We agree.
 {¶ 41} The record shows that Mark asked the trial court to interview Megan and Morgan. "R.C. 3109.04(B)(1) requires a trial court to conduct an in camera interview upon a party's request when the court isdetermining the child's best interest. * * * Because the [trial] court did not find a change of circumstances, it did not need to address the child's best interest, and thus, was not required to conduct an in camera interview of [the child]." Terry L, 2007-Ohio-916 at ¶ 26. (Emphasis sic.)[2] The trial *Page 13 
court, therefore, did not err by declining to interview Megan and Morgan.
 {¶ 42} At this juncture, we briefly address the view in the dissenting opinion that we improperly apply a two-tiered analysis under R.C. 3109.04(E)(1)(a), that is, that a trial court need not consider and/or address the best interest of a child if the trial court finds there is no change of circumstances.
 {¶ 43} We do not dispute that the best interest of a child is the primary concern in custody matters under R.C. 3109.04. See Gardini v.Moyer (1991), 61 Ohio St.3d 479. Because custody orders are never final, a trial court has a continuing responsibility under R.C. 3109.04(B)(1) and (E)(1)(a) to protect the best interest of the children. Broadnax v.Bowling, Hamilton App. No. C-030502, 2004-Ohio-1114, citing Kelm v.Kelm, 92 Ohio St.3d 223, 2001-Ohio-168. Nor do we dispute that the Ohio Supreme Court has never expressly applied or prescribed a two-tiered analysis requiring an initial finding of change of circumstances before considering or addressing whether the custody modification serves the best interest of the child.
 {¶ 44} In Fisher v. Hasenjager, 116 Ohio St.3d 53, 2007-Ohio-5589, a decision briefly referred to in the dissenting opinion, the Ohio Supreme Court held that "[o]nly R.C. 3109.04(E)(1)(a) expressly authorizes a court to modify a prior decree allocating parental rights and responsibilities." Id. at ¶ 21. "Modification of a prior decree, pursuant to R.C. 3109.04(E)(1)(a), may only be made `based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent, * * *, and that the modification is necessary to serve the best interest of the child.' This is a high standard, as a `change' must have occurred in the life of the child or the parent *Page 14 before the court will consider whether the current designation ofresidential parent and legal custodian should be altered." Id. at ¶ 33. (Emphasis added.) See, also, Davis v. Flickinger, 1997-Ohio-260 (R.C. 3109.04 requires only a finding of a "change in circumstances" before a trial court can determine the best interest of the child in considering a change of custody; a new marriage that creates hostility * * * may be an unforeseen change in circumstances warranting further inquiry into the best interest of the child).
 {¶ 45} While R.C. 3109.04(E)(1)(a) does not expressly set forth a two-tiered analysis in modifying, post decree, the allocation of parental rights and responsibilities, the simple truth is that absent a mandate from the legislature or the Ohio Supreme Court that a finding that "modification is necessary to serve the best interest of the child" can, in and of itself, be found to constitute a change of circumstances, a trial court never reaches the best interest determination unless it first finds a change of circumstances in the life of either the child or the residential parent. Without the mandated finding of a change of circumstances, the trial court's analysis ends.
 {¶ 46} In light of all of the foregoing, we reject Mark's contention he was discriminated against by the trial court when it denied his motion for custody of Morgan. We find that the trial court did not abuse its discretion in finding there was no change of circumstances warranting the modification of the existing custody order. The trial court therefore properly denied Mark's motions for custody of Morgan and to terminate his child support obligation. Mark's first assignment of error is overruled.
 {¶ 47} Mark's assignment of error No. 2:
 {¶ 48} "THE TRIAL COURT ERRED BY ACCEPTING TESTIMONY THAT *Page 15 
CONTRADICTS FACTS."
 {¶ 49} In this assignment of error, Mark first argues that since Lisa was not working during the summer of 2005 and Tusing was living at her residence, thus generating some additional expenses, Lisa was improperly using her support income to pay these expenses or Tusing was paying for them, which amounted to cohabitation.
 {¶ 50} Incorporating our treatment of Mark's cohabitation argument in his third assignment of error under this assignment of error, we find Mark's argument to be without merit. Notwithstanding Mark's argument to the contrary, there is no evidence of financial support flowing between Lisa and Tusing. Further, Mark did not offer any evidence that Lisa was improperly using her support income to pay for Tusing's expenses or that Tusing was paying for them so as to amount to cohabitation.
 {¶ 51} Mark also argues that Lisa did not sell the parties' van at fair market value or divide the net proceeds as ordered because she sold the van for only $1,400 (at a fraction of what Mark almost sold the van for one year earlier) and did not divide the cost of repairs for the van.
 {¶ 52} Although one of Mark's objections to the magistrate's decision dealt with the parties' van, Mark failed to raise this specific issue in his objections and does not claim plain error here. He is therefore precluded from raising this issue on appeal. Civ. R. 53(D)(3)(b)(ii), (iv); Marder, 2008-Ohio-2500.
 {¶ 53} Mark's second assignment of error is overruled.
 {¶ 54} Judgment affirmed.
WALSH, J., concurs. *Page 16 
RINGLAND, J., concurs in part and dissents in part.
[1] We recognize that Mark filed his objections to the magistrate's decision pro se. However, pro se litigants are bound by the same rules and procedures as members of the bar. Cat-The Rental Store v.Sparto, Clinton App. No. CA2001-08-024, 2002-Ohio-614, at 5. "They are not to be accorded greater rights and are bound to accept the results of their own mistakes and errors, including those related to correct legal procedures." Id.
[2] In Naegel v. Naegel (Jan. 31, 1994), Clermont App. No. CA93-06-041, we reversed a trial court's decision denying a mother's request that her children be interviewed. We held that under R.C. 3109.04 (B)(1), when a parent asks a trial court to interview the children, the trial court is obligated to do so. Id. at 5. In TerryL., we discussed the holding in Naegel, but distinguished it on the ground that Naegel involved an initial custody award, not a reallocation of parental rights and responsibilities. Terry L., 2007-Ohio-916
at ¶ 26.