[Cite as *Longano v. Poeppelman*, 2017-Ohio-7119.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| DANIELLE M. LONGANO, | : | |
| | | CASE NO. CA2016-11-225 |
| Plaintiff-Appellant, | : | |
| | | O P I N I O N |
| | : | 8/7/2017 |
| - vs - | : | |
| | : | |
| JAMES L. POEPPELMAN, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR13-11-1171


The Lampe Law Office, LLC, M. Lynn Lampe, 1248 Nilles Road, Suite 7, Fairfield, Ohio 45014, for plaintiff-appellant

Courtney N. Caparella-Kraemer, 4841 Rialto Road, Suite A, West Chester, Ohio 45069, for defendant-appellee


**S. POWELL, J.**

{¶ 1} Appellant, Danielle Poeppelman kna Longano ("Longano"), appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, following her divorce from appellee, James Poeppelman ("Poeppelman"). For the reasons outlined below, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2} Longano and Poeppelman were married on July 12, 2008 and subsequently

divorced on August 21, 2014. The parties have one child, a daughter, born August 2, 2011. At the time of their divorce, Longano and Poeppelman entered into a shared parenting plan, a plan that both parties later agreed they wanted to terminate. It is undisputed that both Longano and Poeppelman requested the trial court to name them the residential parent and legal custodian of their daughter, which is evident based on the various motions filed by each party. These include motions to modify parenting time, motions for contempt, and motions to designate custodian.

{¶ 3} Due to the extensive motions filed by both Longano and Poeppelman, including a request to modify spousal support, the matter proceeded to a three-day hearing before a trial court magistrate. This hearing ultimately concluded on January 21, 2016. Following this hearing, on March 16, 2016, the magistrate issued a decision designating Longano as the residential parent and legal custodian of their daughter, whereas Poeppelman received parenting time. The magistrate further found that the parties had stipulated that Longano had been cohabiting with her boyfriend "at least by April 1, 2015. Therefore, the spousal support obligation shall terminate March 31, 2015."

{¶ 4} On March 18, 2016, Poeppelman filed objections to the magistrate's decision, which he then supplemented on July 14, 2016. As part of his objections, Poeppelman challenged the magistrate's decision as it relates to the date Longano began cohabiting with her boyfriend, as well as the magistrate's decision regarding Poeppelman's parenting time. In sustaining Poeppelman's objections, the trial court determined that Longano began cohabiting with her boyfriend on November 22, 2014, the day Longano filed her notice of intent to relocate. The trial court also modified the magistrate's decision regarding Poeppelman's parenting time to allow each parent nearly equal parenting time with their daughter. As the trial court found, this modification was necessary due to the "history of bad behavior and manipulation between the parties" so as to implement "a tightly delineated

parenting order with little room for manipulation in the absence of an agreement of the parties."

{¶ 5} Longano now appeals from the trial court's decision, raising two assignments of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ABUSED ITS DISCRETION IN THE ALLOCATION OF THE PARENTING TIME SCHEDULE FOR THE CHILD AND THE FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} In her first assignment of error, Longano argues the trial court's decision regarding the parties' parenting time was an abuse of discretion and otherwise against the manifest weight of the evidence. We disagree.

{¶ 9} In reviewing the record of the three-day hearing, as well as the trial court's lengthy decision on the matter, it is clear the trial court gave careful consideration to the relevant factors listed in R.C. 3109.051(D), including those contained in R.C. 3109.051(D)(7) and (D)(9), in an effort to craft a parenting time schedule that allowed both Longano and Poeppelman to be involved in their daughter's life while also minimizing "the history of bad behavior and manipulation between the parties," conduct the trial court rightly characterized as "toxic" due to a "high level of distrust." The record is also clear, as the trial court found, that Longano and Poeppelman "cannot appropriately communicate with each other" and are "unable to compromise on changes to their parenting time schedule," thereby necessitating a parenting time schedule that is "tightly delineated."

{¶ 10} It is well-established that the trial court has broad discretion in deciding matters regarding the visitation rights of nonresidential parents. *Althammer v. Pottorf*, 12th Dist. Clermont No. CA2010-11-090, 2011-Ohio-3764, ¶ 21. The trial court, in its sound discretion, determined that implementing a parenting time schedule that was nearly equal was

- 3 -

appropriate, a sentiment that was generally echoed by the guardian ad litem who supported maintaining a shared parenting plan. Although we understand Longano's concerns, just as the trial court found, the record supports the trial court's finding that a nearly equal parenting time schedule was in the best interests of their daughter, with whom both Longano and Peopleman have a clear bond. Therefore, when considering the child's best interest, we simply cannot say the trial court's decision to implement a nearly equal parenting time schedule was an abuse of discretion or that it was against the manifest weight of the evidence. Accordingly, finding no error in the trial court's decision, Longano's first assignment of error is overruled.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS FINDING OF A SPECIFIC DATE OF COHABITATION TO TERMINATE SPOUSAL SUPPORT AND THEREFORE ERRED IN ITS CALCULATION OF CHILD SUPPORT.

{¶ 13} In her second assignment of error, Longano argues the trial court erred by finding she began cohabiting with her boyfriend on November 22, 2014, the day she filed her notice of intent to relocate, as opposed to at least by April 1, 2015, the day stipulated to by the parties. We agree.

{¶ 14} In this case, it is undisputed that the home where Longano lived with her boyfriend was titled solely in Longano's name. Moreover, although the record contains some evidence that Longano's boyfriend had worked on the property and had purchased groceries, the record is devoid of any evidence Longano's boyfriend provided Longano with any monetary support to pay her mortgage, monthly bills and expenses, or utilities. In fact, it was Longano who loaned her boyfriend money, approximately $1,000, a sum he later paid back. Furthermore, when specifically asked if her boyfriend contributed financially to the household, Longano testified "[n]o, he didn't contribute to my household. Uh, like he said, food and stuff

- 4 -

like that, but no. Everything, 100%, I paid for."

{¶ 15} There was also no evidence indicating Longano and her boyfriend had been living together for any significant period of time, but rather, somewhere closer to a period of three weeks when Longano filed her notice of intent to relocate. Yet, even then, the record firmly establishes that this living arrangement was merely a "test run" since both Longano and her boyfriend had been divorced and neither wanted to complicate matters in case the relationship turned sour. As Logano testified, she was "letting [her boyfriend] stay with the intention of it hopefully becoming a more permanent situation," thus indicating neither she nor her boyfriend held themselves out as a married couple. Longano further testified:

> I was not going to be put in the same situation where, like [Poeppelman] and I, we date, everything's great, and then we moved in together and he's a completely different person. I'm not going to have mail coming to my home and money that I owe this man. If we break up, "Bye. You're out of here, right now, tonight." And that's how I wanted it in my house.

{¶ 16} Longano also testified that her relationship with her boyfriend had since "progressed" from someone who was merely "staying in my house at my discretion that I'm scared to I guess make any real commitment with" to "after time and conversation feeling comfortable enough to, you know, take the step to, um, cohabitation." According to the parties' stipulation, and as originally noted by the magistrate, this occurred "at least by April 1, 2015."

{¶ 17} As this court has stated previously, cohabitation "requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour so as to be the functional equivalent of a marriage." *Cravens v. Cravens*, 12th Dist. Warren No. CA2008-02-033, 2009-Ohio-1733, ¶ 10. "[L]iving together and sharing expenses is non-conclusive evidence of cohabitation." *King v. King*, 12th Dist. Warren No. CA93-07-053, 1993 Ohio App. LEXIS

5689, *1 (Nov. 29, 1993). However, "there must be a showing of mutual financial support before spousal support can be terminated." *Aldridge v. Aldridge*, 12th Dist. Preble No. CA97-09-025, 1998 Ohio App. LEXIS 4385, *3 (Sept. 21, 1998). The pertinent issue, therefore, is whether the alleged cohabitants "assumed obligations equivalent to those arising from a ceremonial marriage." *Taylor v. Taylor*, 11 Ohio App.3d 279, 280 (1st Dist.1983).

{¶ 18} As noted above, contrary to the trial court's decision, the record is devoid of any evidence indicating Longano and her boyfriend were cohabiting on November 22, 2014. Again, as this court has stated, "[c]ohabitation contemplates a relationship that approximates, or is the functional equivalent of, a marriage." *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 29. That did not occur here until many months later. Therefore, while we generally defer to the trial court decision on questions of fact, we nevertheless conclude that the trial court's decision finding Longano began cohabiting with her boyfriend on November 22, 2014, the day she filed her notice of intent to relocate, is not supported by the record. Accordingly, Longano's second assignment of error is sustained, the trial court's decision is reversed, and this matter is remanded for further proceedings based on the parties' stipulation that Longano began cohabiting with her boyfriend, as the magistrate originally noted, "at least by April 1, 2015."

{¶ 19} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

HENDRICKSON, P.J., and M. POWELL, J., concur.