[Cite as *Binks v. Binks*, 2019-Ohio-17.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ANDREW BINKS a.k.a. HANNAH BINKS, | : | |
| Appellant, | : | CASE NO. CA2018-02-023 |
| | : | O P I N I O N |
| - vs - | | 1/7/2019 |
| | : | |
| KAREN BINKS, | : | |
| Appellee. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2015-12-1056

Mark W. Raines, 246 High Street, Hamilton, Ohio 45011, for appellant

Daniel J. Picard, 110 Old Street, Monroe, Ohio 45050, for appellee

**PIPER, J.**

{¶ 1} Appellant, Andrew Binks, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing property and ordering spousal support after Andrew's divorce from Karen Binks.

{¶ 2} The parties separated in 2015 and later began divorce proceedings. The main contention between the parties involved the division of property and spousal support. The trial court held a two-day hearing and then issued its final divorce decree on January 17, 2018.

{¶ 3} Within the trial court's decision, it specifically noted that Karen presented "overwhelming" evidence of Andrew's financial misconduct, which occurred before and during the divorce proceedings. The court found that Andrew failed to disclose property and income to Karen, and also engaged in dissipation, concealment, and fraudulent disposition of assets. The trial court expressly considered the impact of Andrew's financial misconduct on the issues pertaining to spousal support and property division.

{¶ 4} Andrew now appeals the trial court's ruling, raising the following assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT INCLUDED VARIOUS PROPERTY NOT OWNED BY THE APPELLANT OR APPELLEE IN ITS DIVISION OF PROPERTY.

{¶ 7} Andrew argues in the first assignment of error that the trial court erred by allocating property during the divorce when neither party owned the property in question.

{¶ 8} According to R.C. 3105.171, the trial court is vested with authority to divide marital property upon the parties' divorce. Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶11. Pursuant to R.C. 3105.171(B), the first step is for the court to determine what constitutes marital property and what constitutes separate property. An appellate court reviews the trial court's classification of property as marital or separate under the manifest weight of the evidence standard. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8.

{¶ 9} Manifest weight "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Ohmer v.*

*Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 36. In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Id.* If the evidence is susceptible of more than one understanding, the reviewing court is bound to give it an interpretation consistent with the judgment, "most favorable" to sustaining the judgment. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶ 10} The trial court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54. More than mere error of judgment, an abuse of discretion requires that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} Andrew first argues that the trial court erred by charging the value of a 1987 Sea Ray boat purchased during the marriage to him twice. The record indicates that the trial court awarded the 1987 Sea Ray boat to Andrew with a value of $14,940 during its property distribution. The same 1987 Sea Ray boat is later referenced in the trial court's decision regarding marital property sold before the divorce, with a sold value of $17,900. The trial court's recapitulation shows that the court credited the 1987 Sea Ray boat against Andrew once for $14,940 and then again as part of the "sold property," which totaled $29,142. Thus, the court incorrectly attributed Andrew's total with the value of the boat twice.

{¶ 12} Karen argues that the boat referred to in the sold marital property of the trial court's decision is a 1995 Sea Ray boat with a value of $20,000. However, and while this is possible, the trial court specifically referenced a 1987 Sea Ray boat in its decision listed as sold marital property. Nothing in the record definitively establishes that the trial court meant to

reference a different boat. Therefore, it is necessary to remand this case for the trial court to either correct its error in considering the same boat twice or correct the error of not referring to two different boats. Either way, the trial court must determine the actual value of the 1987 Sea Ray boat and include it toward Andrew's total one time. To this end, Andrew's first assignment of error is sustained in part.

{¶ 13} Andrew also claims that the trial court erred in finding that a Bobcat Toolcat and various automobiles were marital property since these items belong to his father. However, the trial court made a specific finding that Andrew's assertion that his father owns these pieces of property was "nothing short of absurd." As previously mentioned, the trial court determined that Andrew engaged in financial misconduct, including transferring title of various property to his father.

{¶ 14} Andrew testified that he titled the vehicles to his father as payment for living in his father's home after his and Karen's home burned. However, the trial court found Andrew's testimony lacking credibility and we will not disturb this finding on appeal. The record demonstrates that the vehicles were purchased during the marriage, and as such, were marital property. This aspect of Andrew's first assignment of error is, therefore, overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT ASSIGNED VALUE TO MARITAL PROPERLY THAT WAS NOT SUPPORTED BY THE EVIDENCE.

{¶ 17} Andrew argues in the second assignment of error that the trial court erred when assigning value to property that was later divided.

{¶ 18} "Prior to making an equitable division of marital property, a trial court must determine the value of marital assets." *Dollries v. Dollries*, 12th Dist. Butler Nos. CA2012-08-167 and CA2012-11-234, 2014-Ohio-1883, ¶ 10. When valuing a marital asset, the trial court

is not required to use a particular valuation and is not precluded from using any method. *Sieber v. Sieber*, 12th Dist. Butler Nos. CA2014-05-106 and CA2014-05-114, 2015-Ohio-2315, ¶ 34. However, in determining the value of marital property, the trial court must have evidence before it to support the established value. *Id.* "An appellate court will not reverse a trial court's decision regarding what figures it uses to determine an equitable division where the decision is supported by the manifest weight of the evidence." *Dollries* at ¶ 10.

{¶ 19} Andrew argues that the trial court erred in valuing a Cessna airplane bought during the marriage at $150,000 when such valuation was not supported by the evidence. Karen submitted an affidavit, admitted into evidence, which listed the value of the Cessna airplane at $150,000. While Andrew now challenges the trial court's acceptance of Karen's stated value, the record indicates that Andrew did not challenge the value during the hearing or offer any evidence or testimony in opposition to the valuation of the Cessna.

{¶ 20} While Andrew now argues that the Cessna was valued for significantly less than $150,000 at a subsequent bankruptcy proceeding, the bankruptcy proceeding was wholly separate from the divorce hearing and did not have any binding effect on the trial court's valuation. In the absence of any evidence to the contrary, the trial court did not err in valuing the Cessna.

{¶ 21} Andrew also argues that the trial court erred in valuing a 1998 Chris Craft boat at $24,120. The parties did not establish the boat's actual value, and instead, the trial court relied upon a 2017 NADA price report. Within the report, the suggested list price of the Chris Craft boat is listed as $24,120. The report defines suggested list price as the "highest suggested retail price in the U.S.A. when the unit was new." However, the record does not support the trial court's use of that value, as the boat is not new. Instead, the trial court should have used either the low or average retail amount listed on the exhibit, which better reflects the value of a used boat. Andrew's second assignment of error is sustained as it relates to the 1998 Chris

Craft boat but is overruled as it relates to the Cessna airplane. On remand, the trial court shall determine a new value for the Chris Craft boat and make necessary recalculations based upon the value it selects.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT ORDERED SPOUSAL SUPPORT TO BE PAID TO APPELLEE.

{¶ 24} Andrew argues in the third assignment of error that the trial court's spousal support order was erroneous.

{¶ 25} A trial court has broad discretion to determine the proper amount and duration of spousal support based on the facts and circumstances of each case, and a trial court's award of spousal support will not be disturbed absent an abuse of discretion. *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 10.

{¶ 26} A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1). *Id.* According to R.C. 3105.18(C)(1), "the court shall consider" the statutory factors, such as income of the parties, earning abilities of the parties, ages, duration of marriage, standard of living, education of parties, and assets.

{¶ 27} Andrew first argues that the trial court did not impute enough income to Karen, given her education and experience as a certified public accountant. While it is true that Karen had previously been employed with a salary higher than the income imputed to her, the trial court considered that Karen lost her job because of Andrew's own actions and may not be able to obtain employment in the future at the same salary she earned in the past.

{¶ 28} Specifically, Andrew filed more than 70 criminal complaints against Karen in Maryland, alleging that she stole checks. Because of the charges, Karen lost her job and has not been able to find a similarly-paying job since. Andrew admitted during the hearing that he lied when he filed the criminal complaints, and the record indicates that each of the charges

filed against Karen have been dismissed. Even so, and while there was no truth at all to the charges, Karen's employment abilities have been impacted by the charges being filed in the first place. Thus, the trial court did not err in imputing what income it did to Karen.

{¶ 29} Andrew next argues that the trial court erred by not finding that Karen was ineligible for spousal support because she was cohabiting with her fiancé during the divorce proceedings. The trial court considered all of the testimony and evidence and found that Karen was not cohabiting with her fiancé.

{¶ 30} Within the context of a divorce decree, "cohabitation" contemplates a relationship that is the functional equivalent of a marriage. *Fox v. Fox*, 12th Dist. Clermont No. CA2013-08-066, 2014-Ohio-1887, ¶ 27. In determining whether cohabitation exists, courts consider three principal factors: "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Keith v. Keith*, 12th Dist. Butler No. CA2010-12-335, 2011-Ohio-6532, ¶ 11. Thus, cohabitation "requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour * * *." *Cravens v. Cravens*, 12th Dist. Warren No. CA2008-02-033, 2009-Ohio-1733, ¶ 10.

{¶ 31} Whether a particular relationship or living arrangement constitutes cohabitation is a question of fact determined by the trial court on a case-by-case basis. *Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850, ¶ 10. Consequently, an appellate court will not overturn a trial court's finding regarding cohabitation so long as it is supported by some competent, credible evidence. *Fox*, 2014-Ohio-1887. A trial court has the best opportunity to observe the demeanor and assess the credibility of each witness. *Cravens*, 2009-Ohio-1733 at ¶ 11.

{¶ 32} Andrew presented no evidence that Karen was cohabiting with her fiancé despite their engagement. Andrew was not able to present evidence establishing that Karen

and her fiancé lived together or shared living expenses so that their relationship was an equivalent to actually being married. While Karen was listed on an application for financing of the engagement ring Karen's fiancé gave her, Karen's fiancé is solely paying the loan and there is no evidence that the two share their finances or that Karen's fiancé supports her. Thus, the trial court's finding is not an abuse of discretion.

{¶ 33} Andrew also argues that the trial court should have given more weight to his poor medical condition. Andrew claimed that he had been recently diagnosed with cancer at the time of the hearing. However, and as previously discussed, Andrew's testimony lacked credibility and Andrew never offered evidence or any details to support his argument that his health was so failing that he would not be able to work in the future. The trial court's weighing of the health factor did not constitute an abuse of discretion.

{¶ 34} Andrew's final assignment of error is overruled.

{¶ 35} Judgment affirmed in part, reversed in part, and this matter is remanded for further proceedings.

S. POWELL, P.J., and HENDRICKSON, J., concur.