[Cite as *Justice v. Smith*, 2020-Ohio-1068.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| TAWNIA JUSTICE, | : | |
| Appellant, | : | CASE NO. CA2019-07-069 |
| | : | O P I N I O N |
| - vs - | | 3/23/2020 |
| | : | |
| STEVEN DAVID SMITH, | : | |
| Appellee. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 17DR039957

Graydon Head & Ritchey LLP, Michael D. McNeil, 312 Walnut Street, Suite 1800, Cincinnati, Ohio 45202, for appellant

Smith, Meier & Webb, LPA, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellee

**PIPER, J.**

{¶ 1} Appellant, Tawnia Justice, appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, granting a motion to terminate spousal support in favor of appellee, Steven David Smith.

{¶ 2} Justice and Smith were married in 2010 and later divorced in 2017. As part

of the parties' separation agreement, Smith agreed to pay Justice $5,300 per month for 18 months or until either party's death or Justice's remarriage or cohabitation. Approximately six months after Smith began his spousal support payments, he moved to terminate spousal support based on his assertion that Justice was cohabiting with her paramour, Paul Darwish.

{¶ 3} A magistrate held a hearing and issued a decision that Justice had in fact cohabited with her paramour. The magistrate terminated Smith's spousal support retroactive to the date that Justice's cohabitation. Justice filed objections to the magistrate's decision, which were overruled by the trial court. Justice now appeals the trial court's decision, raising the following assignment of error:

{¶ 4} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT APPELLANT AND PAUL DARWISH LIVED TOGETHER IN SUCH A MANNER THAT CONSTITUTES COHABITATION, WHICH IS A BASIS FOR TERMINATING SPOUSAL SUPPORT.

{¶ 5} Justice argues in her assignment of error that the trial court abused its discretion in finding that she cohabited with Darwish.

{¶ 6} A trial court has broad discretion in determining matters related to spousal support based on the facts and circumstances of each case. *Schuh v. Schuh*, 12th Dist. Butler No. CA2014-01-007, 2014-Ohio-4755, ¶ 10. More than an error of law or judgment, an abuse of discretion connotes that the trial court's decision is arbitrary, unreasonable or unconscionable. *McFarland v. McFarland*, 12th Dist. Butler No. CA2018-05-098, 2019-Ohio-2673, ¶ 11.

{¶ 7} In a domestic relations context, cohabitation contemplates a relationship that is the functional equivalent of a marriage. *Fox v. Fox*, 12th Dist. Clermont No. CA2013-08-066, 2014-Ohio-1887, ¶ 27. In determining whether cohabitation exists, courts consider

three principal factors: "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses [in] respect to financing and day-to-day incidental expenses." *Keith v. Keith*, 12th Dist. Butler No. CA2010-12-335, 2011-Ohio-6532, ¶ 11. Thus, cohabitation "requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour * * *." *Cravens v. Cravens*, 12th Dist. Warren No. CA2008-02-033, 2009-Ohio-1733, ¶ 10.

{¶ 8} Whether a particular relationship or living arrangement constitutes cohabitation is a question of fact determined by the trial court on a case-by-case basis. *Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850, ¶ 10. Where there is competent, credible evidence to support the trial court's decision, there is no abuse of discretion. *Renz v. Renz*, 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶ 7. Consequently, an appellate court will not overturn a trial court's finding regarding cohabitation so long as it is supported by some competent, credible evidence. *Fox*, 2014-Ohio-1887.

{¶ 9} Proof of cohabitation does not have to be by direct evidence alone, but can be established by circumstantial evidence. *Hosler v. Hosler*, 12th Dist. Clermont No. CA2017-10-052, 2018-Ohio-4486. A trial court has the best opportunity to observe the demeanor and assess the credibility of each witness. *Cravens*, 2009-Ohio-1733 at ¶ 11.

{¶ 10} During the hearing, the magistrate heard evidence that established Justice and Darwish engaged in an "actual living together" of a "sustained duration." The magistrate heard testimony from Justice that she and Darwish met in 2016 and began dating a few weeks later. Justice moved into Darwish's home in March 2017 when she left the marital home she shared with Smith, and continued to live there until September 2017.

{¶ 11} During the first time Justice lived with Darwish, she claimed that she only did so because she feared for her safety during the marriage and that Darwish was openly

dating another woman in addition to her. During this time, Justice did not pay Darwish rent or contribute to the utilities. Justice moved out of Darwish's home in October 2017 so that he could explore his future with the other woman he was dating. Justice then moved into a home owned by a friend where she also lived rent free.

{¶ 12} In November 2017, Justice continued her relationship with Darwish. Justice testified that she stayed with Darwish approximately three times a week and began staying with him even more in 2018. In March 2018, Justice moved back into Darwish's home.[1] She did not leave his residence until June 1, 2018 when she moved into a house she purchased. Justice testified that she began an "exclusive" relationship with Darwish in August 2018, but the magistrate questioned Justice's credibility as to the date when the couple began an exclusive relationship. Instead, the magistrate found it "overly convenient" that the two rekindled their relationship only after Justice moved out of Darwish's home.[2]

{¶ 13} After reviewing the record, we find there was competent, credible evidence demonstrating a shared living arrangement for a sustained period because Justice lived with Darwish for three months when they resumed living together and renewed their romantic relationship.

{¶ 14} Regarding shared expenses, the magistrate heard competent, credible evidence that Darwish supported Justice in a way that might occur in a marital relationship. It is undisputed that Darwish made the initial purchase of Justice's gym where she maintains a business as a personal trainer. Out of the $34,000 investment on her behalf, Justice has

---

1. The magistrate also heard from a private investigator hired by Smith. The investigator observed Justice's vehicle parked near Darwish's residence every day of the surveillance period during late-evening and early-morning hours.

2. In both a civil and criminal case, the credibility of the witnesses is primarily for the trial court. *State v. DeHaas*, 10 Ohio St.2d 230 (1967). This court must accord due deference to creditability determinations of the trial court, as it is not our role to substitute our determination of credibility in place of the trial court's determination. *McVean v. McVean*, 12th Dist. Butler No. CA2018-03-054, 2018-Ohio-4062, ¶ 24.

repaid only $10,000 and admitted there was a "handshake agreement" rather than any legal documentation to repay Darwish the remaining $24,000. While the dissent gives little weight to this questionable explanation of the financial arrangement supporting Justice's income-producing enterprise due to when it occurred, it must be considered in context of the trial court's credibility determination of Justice's testimony as to financial arrangements and the support being provided by Darwish.

{¶ 15} Justice also testified that when she lived with Darwish, she did not pay rent or contribute to household expenses. The testimony clearly established Justice relied upon Darwish paying the utilities and providing a residence while the two were in an established relationship. Many marital relationships are comprised of one spouse passively partaking of the benefits of cohabitation via the financial income and resources of the other spouse. The absence of a paper trail may certainly be considered in context of the trial court's assessment of credibility. Additionally, passively paying routine expenses for a paramour may reasonably be considered by the trial court as "some sort of monetary support." *Cravens*, 2009-Ohio-1733 at ¶ 10.

{¶ 16} This is similar to our decision in *Hosler* where we found cohabitation based in part on the existence of shared expenses and monetary support. 2018-Ohio-4486, ¶ 25. Therein, we determined that the appellant was supported by her paramour where she lived in his home rent free without "an agreement wherein [appellant] experienced any financial detriment to live in the home." *Id.*

{¶ 17} Justice admitted during her testimony that she did not pay rent or any expenses when she lived with Darwish. Instead, Darwish paid all expenses for the home where he and Justice lived so that Justice would not experience any financial detriment. The notion of a paramour or spouse financially paying the bills for the support of their live-in partner or spouse is not a particularly unique phenomenon. In the instant case, Justice

was enabled to use her alimony payments and income towards other pursuits such as the business endeavor she and her paramour had financed.  Thus, we determine the trial court was not unreasonable in finding Darwish and Justice shared living arrangement expenses in a manner considered functionally equivalent to a marriage.

{¶ 18}  After reviewing the record, we find that the trial court did not err in determining that Justice cohabitated with Darwish and we cannot join the dissent in finding the trial court abused its discretion.[3]  To the contrary, we find the trial court did not abuse its discretion by terminating spousal support and that Justice's single assignment of error is overruled.

{¶ 19}  Judgment affirmed.

RINGLAND, J., concurs.

HENDRICKSON, P.J., dissents.


**HENDRICKSON, P.J., dissenting.**

{¶ 20}  I respectfully dissent from the majority's decision as Smith did not meet his burden of establishing that Justice was cohabiting with Darwish.  There was not competent and credible evidence presented that Justice and Darwish had shared expenses with respect to financing and day-to-day incidental expenses while living with one another.

{¶ 21}  As the majority opinion correctly identifies, cohabitation contemplates a relationship that is the functional equivalent of marriage.  *Fox v. Fox*, 12th Dist. Clermont No. CA2013-08-066, 2014-Ohio-1887, ¶ 27.  "In determining whether cohabitation exists, courts consider whether there is '(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses.'"  *Delgado v. Delgado*, 12th Dist. Clermont No. CA2018-03-007, 2018-Ohio-

---

3. As noted above, where there is competent, credible evidence to support the trial court's decision, there is no abuse of discretion.  *Renz v. Renz*, 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶ 7.

4938, ¶ 24, quoting *Keith v. Keith*, 12th Dist. Butler No. CA2010-12-335, 2011-Ohio-6532, ¶ 11. "Cohabitation 'requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour so as to be functional equivalent of a marriage.'" *Cravens v. Cravens*, 12th Dist. Warren No. CA2008-02-033, 2009-Ohio-1733, ¶ 10, quoting *Barrett v. Barrett*, 12th Dist. Butler No. 95-06-110, 1996 Ohio App. LEXIS 2381, *27 (June 10, 1996).

{¶ 22} While the determination of whether a particular relationship or living arrangement constitutes cohabitation is a question of fact to be decided by the trial court on a case-by-case basis, the party seeking to terminate spousal support has the burden of establishing cohabitation. *Dickerson v. Dickerson*, 87 Ohio App.3d 848, 851 (6th Dist.1993); *Morford v. Morford*, 11th Dist. Ashtabula No. 2017-A-0044, 2018-Ohio-3439, ¶ 21.

{¶ 23} In the present case, Smith did not present competent, credible evidence of financial support between Justice and Darwish during the three-month time period the two lived together.[4] No evidence was introduced indicating that during this three-month period, Darwish or Justice comingled their funds or relied on one another for financial support and for the purchase of day-to-day incidental expenses. Justice testified that she maintained a personal bank account at JP Morgan Chase and that Darwish did not have access to that account. Although Darwish and Justice attended the same conferences together, they each

_____

4. As the trial court and majority opinion note, Justice lived with Darwish on two separate occasions. The first time was from March 2017 until September 2017, while her divorce from Smith was being finalized. After moving out of Darwish's residence in September 2017, Justice lived with a friend. Justice moved back in with Darwish in March 2018. Three months later, in June 2018, she moved into her own residence. Smith's motion to terminate spousal support was filed on April 16, 2018, about a month after Justice moved into Darwish's home for the second time. By the time a hearing was held on Smith's motion to terminate spousal support in January 2019, Justice was living in her own residence. The trial court found the three-month period that Justice and Smith lived together from March 2018 to June 1, 2018 constituted as a "sustained duration" for purposes of cohabitation. Though I have reservations about whether three months is of sufficient duration to qualify as cohabitation; *see Hartman v. Hartman*, 9th Dist. Summit No. 22303, 2005-Ohio-4663, ¶ 19; I find it unnecessary to discuss this issue as the evidence presented at the hearing failed to demonstrate that Justice's and Darwish's finances were intertwined and that the two shared day-to-day expenses.

paid their own expenses associated with the conference. Despite the fact that Justice was employed as a personal trainer and received $5,300 in monthly spousal support from Smith, Justice did not assist in paying Darwish's monthly expenses.

{¶ 24} The trial court and the majority rely on the fact that Justice did not pay rent or utilities as evidence that Darwish financially supported Justice, with the former equating the situation to that of a marriage where one partner works while the other partner is a homemaker. There are multiple problems with such a comparison. First, all evidence presented at the hearing indicates that Justice was employed and working outside the home during the three months she lived with Darwish. Second, no evidence was introduced that Justice acted as a homemaker or caretaker for the home as a means of contributing to the home. That Darwish continued to pay his reoccurring household bills during the three months that Justice lived with him without contribution from Justice does not mean the two were in a relationship that was the functional equivalent of a marriage. Moreover, there is no evidence in the record that Darwish's reoccurring household bills increased during the three months Justice lived with him.

{¶ 25} In trying to establish the third prong, the financial prong, of cohabitation, the majority includes the purchase of physical space for Justice's personal training business. However, this transaction has no application here as (1) the acquisition occurred prior to the three-month period of time (March 2018 to May 2018) where the trial court found there was cohabitation, and (2) it was simply a business arrangement where Darwish paid all of the expenses upfront in acquiring the space and Justice verbally agreed to pay him back, as evidenced by the $10,000 payment she made in April 2018. Therefore, this financial arrangement should not be considered when determining whether Justice and Darwish comingled their funds or relied on one another for financial support and for the purchase of day-to-day incidental expenses. However, even if consideration were given to Justice and

Darwish's business arrangement, the arrangement is not indicative of a marital-like relationship. In a marital relationship one does not normally see an exchange of finances wherein one spouse pays for the business expenditures of the other spouse with the expectation of being reimbursed by the other spouse.

{¶ 26} The majority claims that "passively paying routine expenses for a paramour may reasonably be considered by the trial court as 'some sort of monetary support'" and cites to *Cravens v. Cravens*, 2009-Ohio-1733, in support of this contention. *Cravens*, however, does not stand for such a proposition. In *Cravens*, this court upheld a trial court's denial of a motion to terminate spousal support upon finding that "[t]here was no evidence in the record of financial support flowing between [the ex-wife] and [her paramour] so as to constitute the functional equivalent of marriage." *Id.* at ¶ 17. There, the trial court determined that the ex-wife and the paramour were "merely boyfriend and girlfriend" and were not cohabitating. *Id.* The facts presented in that case establish that although the paramour frequently stayed with the ex-wife and helped out with ex-wife's household chores by carrying in groceries and taking out the garbage, there was no financial support exchanged between the two where the two did not have joint bank accounts, joint debts, or joint bills and there was no evidence that the paramour paid any of ex-wife's expenses. *Id.* at ¶ 13-17.

{¶ 27} As this court has previously recognized, "'cohabitation, in the legal sense, implies that some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit a termination of [spousal support].'" *Barrett*, 1996 Ohio App. LEXIS 2381 at *23, quoting *Thomas v. Thomas*, 76 Ohio App.3d 482, 485 (10th Dist.1991). Therefore, in cases where cohabitation has typically been found, there has been some evidence in the record to establish the sharing of expenses equivalent to that of a marriage. *See Delgado*, 2018-

Ohio-4938 at ¶ 30 (cohabitation found there was a sharing of expenses relating to cell phone bills, the purchase of household items, donations made to a child's school charity, the purchase of child's clothing, hotel and travel expenses, and child support obligations). Conversely, we have upheld a trial court's determination that there was no cohabitation in cases where the requisite element of shared expenses was not established. *See Binks v. Binks*, 12th Dist. Butler No. CA2018-02-023, 2019-Ohio-17, ¶ 32 (upholding the trial court's determination that there was no cohabitation where there was no evidence the paramour supported the ex-spouse or that the two had shared finances); *Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850, ¶ 11-13 (upholding the trial court's determination that there was no cohabitation where the record did not contain any evidence that the ex-wife and any of her paramours shared in their finances or that they held themselves out to be a married couple). Here, the record before us is devoid of any evidence that Justice's and Darwish's personal and incidental expenses were shared.

{¶ 28} The present case differs significantly from *Hosler v. Hosler*, 12th Dist. Clermont No. CA2017-10-052, 2018-Ohio-4486, the case cited by the majority and relied on by the trial court. In *Hosler*, the ex-wife was found to be cohabiting with her paramour where the evidence demonstrated that the ex-wife lived with her paramour rent free, provided gratuitous childcare services for her paramour's child, and received money from her paramour through cash transfers, checks, and direct deposits into her checking account. *Id.* at ¶ 25, 29. Additional testimony in that case also established that the ex-wife did not seek employment outside the home after ending her job with her paramour's mother and instead relied on her paramour to assist in paying her day-to-day incidentals, such as groceries and gas and repair bills for her vehicle. *Id.* at ¶ 30-31. The ex-wife further entwined her finances with her paramour's by adding her paramour and his son to her cellular plan, by purchasing a cell phone for her paramour's son, and by making payments

for her paramour's son's overseas class trip. *Id.* at ¶ 32-33. Facts like those in *Hosler*, which show financial entwinement and the sharing of personal expenses, are not present in the record before us.

{¶ 29} The mere fact that an ex-spouse and a paramour live with one another is not sufficient to establish cohabitation. Two more additional prongs must be established in order to make a finding of cohabitation: (1) a sustained duration and (2) shared expenses with respect to financing and day-to-day incidental expenses. *Delgado*, 2018-Ohio-4938, ¶ 24. Due to the lack of evidence that there was financial support flowing between Justice and Darwish so as to constitute the functional equivalent of marriage, I would sustain Justice's assignment of error, reverse the trial court's decision finding cohabitation, and deny Smith's motion to terminate spousal support.