[Cite as *Dollries v. Dollries*, 2014-Ohio-1883.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JOHN J. DOLLRIES, | : | |
| Appellant/Cross-Appellee, | : | CASE NOS. CA2012-08-167<br>CA2012-11-234 |
| - vs - | : | O P I N I O N<br>5/5/2014 |
| | : | |
| PATRICIA A. DOLLRIES, | : | |
| Appellee/Cross-Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2011-08-0879

Laurie K. Ahlers, 2345 Ashland Avenue, Cincinnati, Ohio 45206, for appellant/cross-appellee

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for appellee/cross-appellant

**PIPER, J.**

{¶ 1} Plaintiff-appellant/cross-appellee, John Dollries (Husband), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, regarding his divorce from defendant-appellee/cross-appellant, Patricia Dollries (Wife).

{¶ 2} Husband and Wife were married in November 1986, and had one child during the marriage who is now emancipated. Husband filed for divorce in 2011, and the trial court

held hearings in June and July 2012 to address two issues that the parties were unable to resolve during the pendency of the divorce. Otherwise, the parties were able to reach an agreement regarding all other issues, and the parties presented extensive stipulations to the court during the June 2012 hearing. The two issues left unresolved were specific to spousal support and the valuation of the company partly owned and operated by Husband and Wife, Innovative Labeling Solutions (ILS). ILS is in the business of manufacturing labels and other packaging products such as shrink sleeves and flexible packaging.

{¶ 3} Husband and Wife own approximately 33 percent of ILS, and both parties worked for the company, with Husband acting as CEO and Wife working part-time in the office doing accounts payable and other bookkeeping functions. The parties stipulated that Husband annually earned $208,000 and that Wife earned $35,100 in their employment with ILS.

{¶ 4} At the hearings, the parties offered evidence regarding the value of ILS, including expert testimony from each party. Husband's expert concluded that the parties' interest in ILS was worth $874,429.35 and Wife's expert concluded that the parties' interest was $3,066,000. The trial court agreed with Wife's expert, but adjusted the value to $2,446,619.50 because of what it determined were necessary offsets.

{¶ 5} The trial court also considered spousal support. While the parties stipulated their respective salaries, the trial court added $120,000 to Husband's salary because of various "perks" he receives as part of his employment. The trial court ordered Husband to pay Wife $6,500 per month for 20 years, subject to early termination upon Wife's remarriage or cohabitation.

{¶ 6} The trial court issued a decree of divorce in August 2012, which incorporated the trial court's decisions regarding the two contested issues, as well as the multiple stipulations the parties had reached prior to the hearings. The court held an additional

hearing in October 2012 to determine the issue of payment terms. The court ordered Husband to pay Wife $6,000 per month, in addition to her spousal support, to account for the equalization of marital property ordered within the divorce decree. Husband now appeals the trial court's decision, raising two assignments of error. Wife also appeals the trial court's decision, raising two cross-assignments of error. For ease of discussion, we will address the assignments of error and cross-assignments of error out of order.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DETERMINING THE FAIR MARKET VALUE OF ILS.

{¶ 9} Husband argues in his first assignment of error that the trial court erred (1) in valuing ILS, (2) by not permitting him to offer rebuttal testimony, and (3) by not considering the tax consequences of the property division.

{¶ 10} The trial court is given broad discretion in fashioning a property division and will not be reversed absent an abuse of that discretion. *Roberts v. Roberts*, 12th Dist. Clinton Nos. CA2012-07-015, CA2012-07-016, 2013-Ohio-1733. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). Prior to making an equitable division of marital property, a trial court must determine the value of marital assets. *Donohoo v. Donohoo*, 12th Dist. Clermont Nos. CA2011-11-080, CA2011-11-081, 2012-Ohio-4105, ¶ 51. "Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances." *Baker v. Baker,* 83 Ohio App.3d 700, 702 (9th Dist.1992), citing *Briganti v. Briganti,* 9 Ohio St.3d 220, 221-22 (1984). An appellate court will not reverse a trial court's decision regarding what figures it uses to determine an equitable division where the decision is supported by the manifest weight of the evidence, and it is supported by competent and credible evidence. *Corwin v. Corwin*, 12th Dist. Warren Nos.

- 3 -

CA2013-01-005, CA2013-02-012, 2013-Ohio-3996, ¶ 40; *Moore v. Moore,* 12th Dist. Clermont No. CA2006-09-066, 2007-Ohio-4355, ¶ 45.

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"

(Emphasis sic.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387(1997).

{¶ 11} In a manifest weight analysis, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark,* 12th Dist. Warren Nos. CA2011-06-063, CA2011-06-064, 2012-Ohio-3130, ¶ 67; *Thompkins* at 387.

{¶ 12} During the hearing, the trial court heard evidence regarding the value of ILS from both parties' expert witnesses. The experts reached different conclusions regarding the value of the parties' share in the business, and utilized different approaches in reaching their disparate conclusions. Husband's expert utilized the income and market approaches to value ILS and found that the parties' interest in the company was $874,429.35 while Wife's expert utilized the income approach and valued the parties' interest at $3,066,000. The trial court determined that the value suggested by Wife's expert was more appropriate. After reviewing the record, we do not find that the trial court abused its discretion in using the valuation offered by Wife's expert.

{¶ 13} The trial court specifically found that the valuation of Husband's expert "lacks

credibility" in part because the market approach utilized by Husband's expert was "speculative" in nature. The trial court noted that Husband's expert based the valuation on what a possible buyer would consider if interested in buying the company. Conversely, the trial court considered the valuation offered by Wife's expert, which was based upon a capitalized earnings method, and found the approach to be credible. The data and figures used by Wife's expert were calculated using actual information Husband had *himself* offered when he negotiated the sale of ILS to two potential buyers. Although the sale of ILS ultimately failed, the trial court found the valuation offered by Wife's expert to be "credible" after hearing extensive testimony on the approach and the way in which the expert reached his conclusion. Such a finding was supported by the record, and was not an abuse of the trial court's discretion.

{¶ 14} Husband also argues that the trial court abused its discretion by not giving him a chance to testify on rebuttal after his counsel cross-examined Wife's expert regarding the valuation of ILS. During the second day of the hearing, the experts testified regarding the way in which each reached their respective conclusions regarding the value of ILS. Husband's expert testified first, and Wife was given the opportunity to cross-examine the expert. Wife's expert testified second, and the trial court noted to the parties that they had only requested a half-day trial. The court stated that it would not entertain any testimony after the noon cut-off time because of limitations in scheduling in the trial court's docket. Although Husband had time to cross-examine Wife's expert, he did not have time to offer rebuttal testimony. Despite requesting more time and the chance to be heard, the trial court declined the request, instead reminding the parties that they would be limited to the half-day hearing as they earlier requested.

{¶ 15} A trial court judge possesses inherent power to regulate court proceedings and "a 'ruling or order by the court affecting the conduct of trial will not be reversed unless the

complaining party demonstrates a prejudicial abuse of discretion.'" *Re v. Kessinger*, 12th Dist. Butler No. CA2007-02-044, 2008-Ohio-167, ¶ 49 quoting *Holm v. Smilowitz*, 83 Ohio App.3d 757, 771-772 (4th Dist.1992).

{¶ 16} The record demonstrates that while the trial court declined Husband's request to offer rebuttal testimony because of the time constraints, Husband has failed to demonstrate that the trial court's decision resulted in a prejudicial abuse of discretion. Husband did not proffer any potential testimony or articulate what information was absent, yet necessary, in evaluating the testimony of the experts.

{¶ 17} Moreover, both parties were similarly constrained during the half-day hearing, and the trial court did not favor Wife's case by giving her unequal time or opportunities not afforded to Husband. During Wife's cross-examination of Husband's expert, the trial court interrupted Wife's questioning to remind counsel that there were only 51 minutes remaining during the half-day trial and that the court was not permitting testimony to go past noon. Wife's counsel was limited on cross-examination by the same time constraints that impeded Husband from offering rebuttal testimony, and such did not prejudice either party.

{¶ 18} The record demonstrates that the trial court allowed both parties equal opportunity to present direct testimony of their expert witnesses and to then cross-examine the other party's witness. The trial court also permitted each party to offer post-trial briefs, which included summaries of the testimony presented at the hearings, and also arguments as to why the other's expert testimony was flawed. Therefore, Husband was given the opportunity to present his argument against Wife's valuation and to point to facts in the record that his rebuttal testimony would have addressed. Given all of the circumstances, the trial court did not abuse its discretion by denying Husband's request to offer rebuttal testimony.

{¶ 19} Husband also argues that the trial court abused its discretion by not taking into

consideration the tax consequences related to the division of ILS. We agree. According to R.C. 3105.171(F)(6), in making a division of marital property and a corresponding distributive award, a trial court is required to consider the tax consequences of the property division upon the respective awards. *Gould v. Gould,* 12th Dist. Butler No. CA2004-01-010, 2005-Ohio-416, ¶ 48. "Based on the mandatory language of the statute, the General Assembly has clearly placed a requirement on the trial court to consider the tax consequences of each party's property awards." *Foppe v. Foppe,* 12th Dist. Warren Nos. CA2008-10-128, CA2009-02-022, 2009-Ohio-6926, ¶ 12. However, Ohio courts have also determined that a court need not consider tax consequences that are speculative. *Id.* at ¶ 26.

{¶ 20} The record demonstrates that the trial court was aware that it was required to consider the applicable tax consequences. In its written decision, the court cited to relevant case law and R.C. 3105.171(F)(6) regarding its duty to consider the tax consequences. However, the trial court never stated that it had actually considered the tax consequences of the division of property, mainly the valuation of ILS and its division. Nor did it state that it found the tax consequences speculative in nature. While the trial court's written decision makes specific reference to having considered the tax consequences of its spousal support order, no such reference was ever made to the trial court considering the tax consequences of the property division as is required by statute. Therefore, Husband's argument regarding the tax consequences is meritorious.

{¶ 21} Husband's first assignment of error is overruled as it relates to the trial court's initial valuation of ILS and the trial court not permitting Husband to offer rebuttal testimony. However, Husband's first assignment of error is sustained insofar as the trial court did not demonstrate that it considered the applicable tax consequences of the property division. Therefore, upon remand, the trial court must demonstrate that it has considered the applicable tax consequences of the property division, not just that of the spousal support

- 7 -

decision.

{¶ 22} Cross-assignment of Error No. 1:

{¶ 23} THE TRIAL COURT ERRED TO THE PREJUDICE OF CROSS-APPELLANT WHEN IT ORDERED HUSBAND TO PAY HIS PORTION OF THE PROPERTY DIVISION OVER A 32 YEAR PERIOD.

{¶ 24} Wife argues in her first cross-assignment of error that the trial court erred in providing Husband an extended amount of time to pay her interest in the marital property.

{¶ 25} As previously stated, the trial court is given broad discretion in fashioning a property division and will not be reversed absent an abuse of that discretion. *Roberts v. Roberts*, 12th Dist. Clinton Nos. CA2012-07-015, CA2012-07-016, 2013-Ohio-1733. While a court should attempt to disentangle the parties as much as possible, relevant circumstances should be considered when resolving property issues between parties. *Hoyt v. Hoyt*, 53 Ohio St.3d 177 (1990).

{¶ 26} The trial court ordered Husband to pay Wife $6,000 per month for approximately 32 years to account for the equalization of marital assets. Wife claims that the trial court's order unduly causes further entanglement between the parties and that Husband's income permits him to make larger payments over a shorter period of time. However, a review of the record demonstrates that the trial court considered extensive evidence before ordering Husband to pay as it did.

{¶ 27} The court heard testimony during a separate hearing regarding Husband's monthly cash flow, as well as his ability to make payments to Wife. The record demonstrates that while Husband earns a considerable amount of money, he does not have adequate cash flow to justify a substantially larger monthly payment to Wife. The evidence demonstrates that the parties entered into several business deals that are now detrimental to their finances. For example, the parties financed rental properties in Florida that are costing the couple

significantly more than what the properties earn as rent. The court had before it evidence of Husband's expenses, and we do not find the trial court abused its discretion by setting the payment schedule as it did.

{¶ 28} This is especially true where the trial court took several precautionary measures to ensure that Wife's interest is realized. The trial court first noted that given the extended period of time, Wife would receive a "significant" amount of interest, which will surpass a million dollars if all payments are made according to schedule. The trial court also ordered Husband to make lump sum payments toward the amount he owes Wife should he enjoy increased bonuses, commissions, dividends, or tax refunds.

{¶ 29} The court ordered Husband to protect Wife's interest by procuring a life insurance policy in an amount equal to that which he owed, so that in the event of Husband's death, Wife's interest would be paid in full. The trial court also ordered Husband to provide Wife with documentation of his financial status on a yearly basis, and also ordered Husband to pay Wife her interest immediately upon the sale of ILS (should one occur in the future). The trial court also maintained jurisdiction to change the orders should such change become necessary before Wife's interest is paid in full.

{¶ 30} The trial court's decision was based upon the relevant circumstances of the case, and we do not find an abuse of discretion as suggested by Wife. Based on the foregoing, Wife's first cross-assignment of error is overruled.

{¶ 31} Cross-assignment of Error No. 2:

{¶ 32} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT DELINEATE HOW IT ARRIVED AT THE ADJUSTMENTS IT MADE TO REDUCE THE VALUE OF ILS.

{¶ 33} Wife argues in her second cross-assignment of error that the trial court erred by adjusting the value of ILS without articulating the reason for such a downward deviation.

{¶ 34} The trial court specifically found that in the previous attempts to sell, Husband had suggested certain adjustments be made regarding the value of the business. While Wife's expert took into account these adjustments, the trial court noted its intent to use some of the adjustments to calculate spousal support, rather than in valuing the business because those adjustments related to certain "perks" Husband received. Therefore, in order to ensure that Husband was not twice penalized for the perks, the trial court adjusted the valuation by "owners' compensation, automobile allowance, and personal expenses." The trial court also noted that it was considering expenses associated with "extra employees, marketing, and travel."

{¶ 35} While the trial court's reasoning is sound for its decision to adjust the valuation, the figures employed by the trial court are not supported by the record. The trial court's order that the company's value be adjusted by $321,000 cannot be justified by any figures provided in the record without this court making an assumption that there was a mathematical error.[1] The figures employed by the trial court, in as much as those figures were set forth in the written decision, do not equal $321,000, and this court is not in a position as a reviewing court to supplant our judgment for that of the trial court in making a determination as to what the figure actually represents, or what it was intended to represent.

{¶ 36} Wife's second cross-assignment of error is therefore sustained. Upon remand, the trial court must specifically delineate the figures used to compute the proper adjustment, and those figures must be supported by the record.

{¶ 37} Assignment of Error No. 2:

---

1. The trial court noted that it intended to adjust the value based on husband's perks, extra employees, marketing, and travel. The trial court used $120,000 to represent Husband's perks, and stated that it was making a $72,000 adjustment based upon a purchase made by ILS as well as unrelated marketing expenses. The trial court made no other delineation as to what figures it employed for the other categories of adjustments, and neither the parties to this appeal nor this court have been able to reach a sum of $321,000 based on the evidence.

{¶ 38} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DETERMINING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT.

{¶ 39} Husband argues in his second assignment of error that the trial court abused its discretion in ordering spousal support.

{¶ 40} According to R.C. 3105.18(C)(1),

[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain

appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

"A trial court has broad discretion to determine the proper amount and duration of spousal support based on the facts and circumstances of each case, and a trial court's award of spousal support will not be disturbed absent an abuse of discretion." *Kedanis v. Kedanis,* 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 10.

{¶ 41} The record demonstrates that the trial court took into consideration the relevant statutory factors before ordering Husband to pay Wife spousal support for 20 years. The trial court determined that there is a wide gap between the relative earning abilities of the parties, as Husband earns a substantial annual salary while Wife worked part time and would not be employed by ILS after the divorce. The court also considered the ages and the physical, mental, and emotional conditions of the parties and found that Husband was 48 and in good health and that Wife was 47 and in good health. Neither party accumulated substantial retirement benefits during the 26-year marriage. The court found that the parties established a "good" standard of living during the marriage, based upon evidence that the parties enjoyed international travel, made several business investments, and were also in a position to assist their emancipated daughter with college and living expenses. The court considered the relative extent of the parties' education, specifically that Husband has a college degree while Wife has a high school diploma. The court also noted that Wife lost some income production capacity because of her marital responsibilities, including Wife's efforts in raising the parties' daughter.

**{¶ 42}** The trial court also considered the relative assets and liabilities of the parties, including, but not limited to, any court-ordered payments by the parties. The trial court heard ample evidence regarding the large accumulated marital debt, as well as the parties' limited amount of cash flow. The court also considered the tax consequences, for each party, relative to an award of spousal support.

**{¶ 43}** While these factors and the court's consideration of the evidence are supported by the record, the trial court's decision regarding Husband's annual income is not supported by the record. When the trial court considered the first factor, "the income of the parties, from all sources," the trial court found that Husband earned $120,000 in "perks" in addition to his annual salary, which the parties stipulated as $208,000. The trial court based this finding upon testimony from Wife's expert. During the hearing, Wife's expert testified to the way in which he valued ILS, and made reference to certain adjustments. One such adjustment was that he approximated $120,000 in personal expenses "being run though the company in 2011 alone."

**{¶ 44}** Despite the expert's passing reference to the $120,000 figure, the expert did not present testimony to establish that the entire amount of expenses was actually Husband's or delineated solely for his benefit. During other parts of his testimony, Wife's expert admitted that he did not communicate with Husband during the valuation process and that he did not go to ILS to learn from the employees about the company. While the expert had ample documentation about the figures as they related to the overall business value, there is no indication in the record that these figures can be directly tied to Husband as "perks" without further testimony or evidentiary support.

**{¶ 45}** Nor did Wife include as an exhibit the figures used by her expert specific to

2011 upon which he based the $120,000 figure.[2] Instead, Wife offered an exhibit that included figures for 2010. On this exhibit, the expert listed several adjustments as those figures related to the value of ILS. However, only two figures are listed specific to Husband: $27,710.36 for "Gas/Auto" and $5,600 as "xtra [sic] pay." Other expenses, conversely, are generally listed and do not demonstrate that they were specific to Husband. For example, $10,200 is listed for tickets to Bengals and Xavier games, $21,690.29 as "xtra [sic] personal expenses in lieu of Pay," and $15,000 for "extra travel." While the testimony established that Husband did enjoy travel as part of his employment with ILS and that he would use business funds to pay for personal expense in lieu of payroll, there is no way to indicate from the record that *all* of these expenses were exclusive to Husband our could not otherwise possibly constitute legitimate business expenses.

{¶ 46} While the duration of the spousal support was not abuse of discretion, we find that the trial court abused its discretion by adding $120,000 to Husband's annual salary without having proper evidentiary support for doing so. Upon remand, the trial court may consider further testimony or evidence to establish the actual amount of "perks" Husband earns as part of his income. Accordingly, Husband's second assignment of error is sustained.

{¶ 47} Judgment affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this Opinion.

RINGLAND, P.J., and S. POWELL, J., concur.

---

2. One of Husband's exhibits lists certain adjustments similar to those discussed by Wife's expert, specific to 2011. However, this exhibit also fails to list expenses as being specific to Husband, and the figures do not equal $120,000.