[Cite as *Doty v. Doty*, 2023-Ohio-2519.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JESSE D. DOTY, | : | |
| Appellant, | : | CASE NO. CA2022-01-002 |
| | : | O P I N I O N |
| - vs - | | 7/24/2023 |
| | : | |
| BRANDI M. DOTY, | : | |
| Appellee. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2020-02-0123

Joseph A. Cesta and Frank J. Schiavone IV, for appellant.

Cook Howard Law, Ltd., and Melynda Cook Howard, for appellee.

**BYRNE, J.**

{¶ 1} The Butler County Court of Common Pleas, Domestic Relations Division, issued a decree of divorce to Jesse D. Doty ("Husband") and Brandi M. Doty ("Wife"). Husband appeals the portions of the divorce decree concerning valuation of the marital home, division of the couple's marital debts, and a "credit" to Wife in the calculation of the portion of the marital home's equity owed to Husband. For the reasons discussed below,

we affirm.

## I. Factual and Procedural Background

{¶ 2} Husband and Wife married in 1998. Children were born of the marriage in 2004 and 2009. In February 2020, Husband filed for divorce. The divorce was contentious. Because Husband only appeals certain portions of the divorce decree, we will only summarize the factual and procedural background relevant to those issues.

### A. Husband's Motion to Sell the Marital Home

{¶ 3} While the divorce action was pending, Husband filed a motion seeking court authority to sell the marital home. At the time, Wife was residing in the marital home with the parties' children, and Husband was not living in the marital home. Wife opposed Husband's motion, stating that she wished to stay in the home following the divorce and to refinance the mortgage in her name.

### B. Wife's Motion for Temporary Spousal Support

{¶ 4} Separately from Husband's motion, Wife filed a motion to establish a temporary spousal support award for her support while the divorce proceedings were ongoing. Wife asserted that the parties had agreed to a division of jointly held marital debts associated with numerous consumer credit accounts and loans ("consumer marital debt"), and that the parties had agreed that each would pay their respective debts. However, Wife alleged that Husband was no longer paying his agreed share of the parties' consumer marital debt, which was negatively affecting her credit score. Wife asked the court for an order requiring Husband to pay her temporary spousal support "in addition to and in the alternative to an order for payments of debts." Wife explained that such an order would allow her to maintain the status quo during the divorce proceedings due to Husband's failure to pay his debts.

**C. Hearing on Motions**

{¶ 5} In October 2020, the parties appeared before a domestic relations magistrate to resolve numerous pre-decree motions, including Husband's motion to sell the marital home and Wife's motion to establish temporary spousal support.

{¶ 6} At the hearing, Wife indicated that she would like to continue residing in the marital home because she and the children had been living in the home, because she had maintained the home, and because she had paid debt associated with the home. Wife indicated she was able to refinance the home but needed Husband to continue to pay his share of the parties' consumer marital debt. Regarding the consumer marital debt, Wife testified that the parties had orally agreed to divide, and each pay, their own portion of the consumer marital debt while the divorce was pending. Wife stated that both parties were paying their bills in accordance with this agreement until March 2020, when Husband refused to pay his portion of the consumer marital debt. Wife claimed that Husband's decision was adversely affecting her credit score, and thus was preventing her from refinancing the marital home.

**D. Magistrate's Decision**

{¶ 7} In November 2020, following the October 2020 hearing on these issues, a magistrate issued a decision and judgment entry ("Magistrate's Decision") indicating that the magistrate had reviewed the parties' affidavits of income and expenses and had also considered the parties' testimony and their demeanor during the hearing, and concluded that Wife needed financial assistance from Husband.

{¶ 8} The magistrate found that Husband was not current on paying his portion of the parties' consumer marital debt and that this was "deliberate" and "financially destructive" to Wife. The magistrate observed that Husband had sought relief from his consumer marital debt payments by falsely informing his creditors that he was unemployed due to the COVID-

19 pandemic. The magistrate found that this action "simply delayed the due date" of the debts and forced Wife to pay them. The magistrate stated that she would grant Wife's request for an award of temporary spousal support because "it is doubtful that [Husband] will pay any debt."

{¶ 9} The magistrate then formally divided the parties' consumer marital debt between Husband and Wife in accordance with Wife's description of the parties' oral agreement. The magistrate attributed consumer marital debt accounts totaling $33,909.76 to Wife and consumer marital debt accounts totaling $30,081.52 to Husband. The magistrate ordered Husband to "pay temporary spousal support to [Wife] in lieu of an order to pay marital debts." Specifically, the magistrate ordered Husband to pay $1,500 per month to Wife as "temporary spousal support" and stated that "[t]he $1,500.00 amount includes the debts [Husband] was to pay as stated in [Wife's] financial affidavit, * * * as well as a partial payment towards the loan in which the marital residence is used for collateral." (The phrase "the loan in which the marital residence is used for collateral" is one of the various phrases the magistrate and court used to refer to the marital home loan. We will simply call it "the mortgage.") The magistrate's decision further stated that Wife "shall be responsible for paying the minimum monthly payments to all the creditors listed in section H on her affidavit of income and expenses with the exception of [Husband's truck loan]." Additionally, the magistrate stated that "[Wife] shall be responsible for payment of the loan in which the [marital] residence serves as collateral [that is, the mortgage] as well as all household debts associated with the marital residence (i.e.: Utilities, water/sewage fees, real estate taxes, etc…)." However, the magistrate did not indicate what specific portions of the monthly $1,500 temporary spousal support payment Wife was to apply to the consumer marital debt, to the mortgage, or for her own support.

{¶ 10} Finally, the magistrate ordered that Wife could continue to live in the marital home and that Wife should take steps to obtain pre-approval for refinancing of the mortgage. The magistrate reserved for the final hearing the issue of whether the marital home should be sold.

**E. Husband's Objections and the Court's Modification of the Magistrate's Decision**

{¶ 11} Husband objected to the Magistrate's Decision, but only challenged the effective date of the temporary spousal support order. In February 2021, the domestic relations court issued a decision in which it agreed with Husband's argument that the effective date of spousal support should begin later than the date selected by the magistrate. The court affirmed all other aspects of the magistrate's decision and modified the decision only as to the effective date of temporary spousal support.

**F. Contested Hearing**

{¶ 12} The case proceeded to a three-day contested hearing in March and May of 2021. Relevant to this appeal, the parties disputed the value of the marital home. Each presented their own appraisals and related evidence.

{¶ 13} Wife called appraiser David McFarland to testify and submitted McFarland's appraisal report. McFarland's report valued the marital home at $252,500 and was premised on comparable sales in 2019 and 2020. Husband submitted the report of his appraiser, Kathryn Wuest. Wuest valued the home at $290,000 and also premised her appraisal on 2019 and 2020 comparable sales. On the final day of the hearing, Husband called Zachary Ferrell, a realtor, to testify. Ferrell testified about the favorable housing market at the time of the hearing. The realtor testified as to the price he would currently list the home for sale, which was anywhere between $400,000 and $430,000.

## G. Court's Decision

{¶ 14} In June 2021, the domestic relations court issued a written decision ("June 2021 Decision") on the contested issues that had been addressed at the hearing held in March and May 2021. The court found that Husband's appraiser – Wuest – presented the more persuasive appraisal as to the valuation of the marital home. The court therefore valued the marital home at $290,000 for purposes of the equitable division of marital assets. The court also granted Wife's request to keep the marital home and refinance it in her name. The court stated that if Wife could obtain refinancing by a date selected by the court, and if Wife then chose to refinance, she was obligated to pay Husband "one-half of net equity less mortgage payment credit to her and equalization payment to her calculated" by a formula set forth in the June 2021 Decision.

{¶ 15} The domestic relations court also reiterated its February 2021 decision confirming Husband's temporary spousal support payments to Wife, and the applicable payment dates.

## H. Divorce Decree

{¶ 16} In December 2021, the domestic relations court issued the parties a decree of divorce ("Divorce Decree"). The Divorce Decree returned to the issue of the parties' consumer marital debt and divided the credit card accounts and loans included in the consumer marital debt between the parties. Based on which party incurred the debts, the court ordered Wife to pay six consumer marital debt accounts totaling $26,746.52, and ordered Husband to pay four consumer marital debt accounts totaling $28,652.51. The Divorce Decree did not indicate what specific payments Wife had applied to pay down these amounts from the $33,907.76 and $30,081.52 amounts indicated in the Magistrate's Decision, or the sources of the funds Wife used in making those payments.

{¶ 17} The Divorce Decree reiterated the court's previous temporary spousal support order, and stated the date on which Husband's temporary spousal support payments terminated.

{¶ 18} The Divorce Decree also returned to the issue of the division of the marital home's equity after refinancing of the mortgage in Wife's name. The court again stated that the marital home's value was "at least $290,000.00." The Divorce Decree then repeated the language in the June 2021 Decision regarding Wife's request to keep and refinance the home, but the Divorce Decree changed the June 2021 Decision's formula regarding Wife's post-refinancing payment to Husband. The new language stated:

> The Court grants Wife an opportunity to refinance the marital home under the following conditions. The refinance terms must include lender appraised value of no less than $290,000.00 and Wife must be approved for refinancing on or before July 15, 2021. If Wife chooses to refinance, she will be obligated to pay Husband one-half of net equity less mortgage payment credit to her and equalization payment to her calculated as follows:
>
> |           | Home Value                    | $290,000.00              |
> |-----------|-------------------------------|--------------------------|
> | (less)    | Mortgage Balance              | (-)$224,712.02[1]        |
> |           | =equity value                 | $65,287.98               |
> |           | =value to be equally divided  | (50% to W) (50% to H)    |
> |           | Deducted from Husband's one-half share: |                |
>
> (less) Mortgage payments paid by Wife July 2020 to closing- calculated at refinance closing
>
> | (less) | Equalization H to W | (-)$6,856.72[2] |
> |--------|---------------------|-----------------|
>
> =Amount owed to H after his share reduced by equalization payment & mortgage payments

{¶ 19} Husband appealed, raising three assignments of error.

## II. Law and Analysis

---

1. This amount, $224,712.02, was the mortgage balance as of June 2020.

2. The domestic relations court drew the $6,856.72 equalization payment amount from the "recapitulation" table on page 10 of the June 2021 Decision. That table lists all the parties' assets and debts, indicates which assets and debts are to be assigned to which party, and concludes that Husband would have to pay $6,856.72 to equalize the division of assets.

**A. Valuation of Real Estate**

{¶ 20} Husband's Assignment of Error No. 1 states:

{¶ 21} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS VALUATION OF THE REAL ESTATE.

{¶ 22} Husband argues that the domestic relations court abused its discretion because its determination of the value of the marital home was not supported by competent, credible evidence. Husband contends that the appraisal relied upon by the court (that is, Wuest's appraisal, the one Husband had himself submitted and relied on at the contested hearing in March and May 2021) was outdated and that the court ignored evidence that the real estate market had significantly changed from the time the appraisals were conducted in 2019 and 2020 to the final hearing date, in May 2021. Husband argues that the appraisal chosen by the court results in an "enormous and inequitable" windfall to Wife. Husband asks this court to order the marital home sold and the value divided, or, alternatively, that this court determine that the value of the marital home is between $400,000 to $430,000. In other words, Husband prefers to receive his portion of $430,000, or whatever the marital home would sell for today, rather than his portion of $290,000.

**1. Applicable Law and Standard of Review**

{¶ 23} A domestic relations court has broad discretion in determining the equitable division of property in a divorce proceeding. *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus. "Prior to making an equitable division of marital property, a trial court must determine the value of marital assets." *Dollries v. Dollries*, 12th Dist. Butler Nos. CA2012-08-167 and CA2012-11-234, 2014-Ohio-1883, ¶ 10. "When valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method." *Gregory v. Kottman-Gregory*, 12th Dist. Madison Nos. CA2004-11-039 and CA2004-11-041, 2005-Ohio-6558, ¶ 15. *Accord Foppe v. Foppe*, 12th Dist.

Warren Nos. CA2008-10-128 and CA2009-02-022, 2009-Ohio-6926, ¶ 34. However, in determining the value of marital property, the trial court must have evidence before it to support the figure that it establishes. *Foppe* at ¶ 35.

{¶ 24} "An appellate court will not reverse a trial court's decision regarding what figures it uses to determine an equitable division where the decision is supported by the manifest weight of the evidence * * *." *Dollries* at ¶ 10. *Accord Corwin v. Corwin*, 12th Dist. Warren Nos. CA2013-01-005 and CA2013-02-012, 2013-Ohio-3996, ¶ 40. The manifest weight of the evidence "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * *'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 14, citing *Eastley* at ¶ 20. A reviewing court should be guided by the presumption in favor of the finder of fact, as the "trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 10. *Accord Eastley* at ¶ 21.

### 2. Analysis of Marital Home Valuation

{¶ 25} In its Decision, the domestic relations court summarized the valuation evidence as follows:

> The parties own real estate located at 7815 Elk Creek Road located in Madison Township, Ohio. The home is subject to an outstanding mortgage with Union Savings Bank (USB) in the

amount of $224,712.02. (Exhibit 5) The parties purchased the lot in January 2017 and built the home together during the marriage. (Exhibit 8) The construction loan transitioned to a traditional mortgage June 2020 and since July 2020, Wife has paid all mortgage installments.

Two appraisal reports were offered concerning the fair market value of the 7815 Elk Creek Road property. The first appraisal was presented by [Wife's appraiser] David McFarland, home appraiser and sole proprietor of Macson Appraisal Service, Mr. McFarland used the sales comparison approach method of appraising the parties' residential single family home. Mr. McFarland first inspected the interior of the home and then conducted a radius MLS (multiple listing system) search for comparably styled homes in the general area. Mr. McFarland felt strongly that a similar home with no basement was a critical aspect to the appraisal report. He also noted that the water source was well water. He opined that well water is known to impact plumbing fixtures and lines that may leave staining on the plumbing fixtures and is overall a less desirable water source for buyers. Mr. McFarland used three comparable sales in his Residential Appraisal Report. He presented his report and opined the appraisal appraised fair market value of the parties' marital residence was equal to $252,500. (Exhibit R)

The second appraisal was prepared by [Husband's appraiser] Kathryn Wuest of Wuest & Associates. A supervisory appraiser, David Wuest, signed the appraisal report. This report also used the comparable approach method of appraising the parties' marital home. As a part of the appraisal process, three comparable sales in the area were identified. According to the report of Ms. Wuest the appraised fair market value of the parties' marital residence was equal to $290,000. (Exhibit 6) It is noted that the rural nature of the area required comparables with a similar acreage and it was necessary to search outside a one mile radius of the parties' home.

Mr. McFarland was unaware that the parties moved into the marital home in January 2020. In fact, Husband never lived in the home. The parties lived in a trailer on the lot during construction. Wife moved into the home in January 2020 and has remained in the home since. Mr. McFarland considered the condition of the home and believed it revealed excessive depreciation. The home was cluttered and visible hard water stains were present. He categorized the home as a "C3". On a scale of six criterion (Cl, C2, C3, C4, C5 & C6) with C6 being the poorest condition, Mr. McFarland ranked the parties' home in the middle of the benchmark ranking. Wife requests an opportunity to refinance and retain the home. (Exhibit T)

> Zachary Ferrell, Real Estate Agent with Keller Williams Realty, is a Realtor in Middletown and recently earned recognition as the 'number one agent' in the area. Mr. Ferrell contends he is familiar with the area where the marital home is located. He acknowledged it to be located in a rural area in 'high demand'. Mr. Ferrell asserts he is familiar with the land and the area and knows the marital home to be a new build located on five acres. Mr. Ferrell is not qualified to provide an appraised value but states that in giving a general listing price range he does not need to enter the home for inspection. He has discussed the home with [Husband] and is prepared to propose a listing price for the home between $400,000 and $430,000. Mr. Ferrell would be willing to serve as real estate agent, if requested. Mr. Ferrell was unaware of any construction issues with the home but agrees serious construction issues could negatively affect its value. Mr. Ferrell indicated that the housing market is very generous at this time and a fair market value is the price negotiated between a willing buyer and a willing seller.

The court went on to state that it had reviewed and considered the appraisal reports and had decided to adopt the valuation of Husband's appraiser, Wuest. The court observed that it found Wuest's comparable properties more persuasive and that Wuest's valuation was bolstered by Ferrell's testimony. Accordingly, the court valued the marital home at $290,000.

{¶ 26} We have reviewed the appraisal reports and the relevant testimony. Based upon our review, we find that the domestic relations court had competent and credible evidence before it which supported its determination as to the valuation of the marital home. The court's decision discussed those aspects of Wuest's appraisal that it found persuasive. There is nothing in the record that would suggest that the court abused its discretion in relying on Wuest's appraisal. Moreover, we find it inconsistent, to say the least, that Husband would argue that the court abused its discretion by relying on Wuest's appraisal when it was Husband, himself, who retained Wuest and submitted Wuest's report into evidence.

- 11 -

{¶ 27} Husband contends that the domestic relations court lost its way by failing to consider the testimony of realtor Ferrell, that the real estate market had improved since the date of Wuest's evaluation, noting that both Wuest and McFarland's appraisals used comparable sales that occurred in 2019 and 2020. However, the domestic relations court did not ignore Ferrell's testimony and, as described above, clearly referenced Ferrell's testimony in summarizing the evidence and even credited Ferrell's testimony as bolstering the court's decision to rely on Wuest's higher valuation, rather than McFarland's lower valuation. Moreover, we note that Ferrell only testified as to a *list price* of the real estate, not to its valuation. The court expressly found that Ferrell's testimony would be limited to his opinion as to a list price and that he was not qualified to render an appraisal opinion, and Husband did not appeal this ruling.

{¶ 28} While McFarland was given access to the marital home in order to make his assessment, Wuest and Ferrell were never granted access to the interior of the home and so they were unable to assess the then-present condition of the home's interior. Wuest relied on a drive-by, exterior-only view of the home and review of interior photographs taken before Wife had occupancy of the home. Ferrell also relied on photographs.

{¶ 29} After seeing the interior of the home, McFarland described the home, though new, as having been poorly cared for by Wife. McFarland stated that the home had been "rode hard and put away wet," and stated that it had experienced "excessive depreciation" in a short period of occupancy based on clutter, already-stained bathroom fixtures, and a general lack of appropriate upkeep. This testimony provided further reason for the trial court to reject Ferrell's list price estimate of $400,000 to $430,000. While Wuest also did not view the interior of the home, Wuest's appraisal of $290,000 was much closer to McFarland's $252,500 appraisal than Ferrell's much higher proposed list price.

{¶ 30} For these reasons, we find that the record contains competent and credible evidence supporting the domestic relation court's valuation of the marital home at $290,000 and that the court's valuation was not against the manifest weight of the evidence. We therefore overrule Husband's first assignment of error.

## B. Temporary Spousal Support and Consumer Marital Debt

{¶ 31} Husband's Assignment of Error No. 2 states:

{¶ 32} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS DIVISION OF THE MARITAL DEBT BY FAILING TO CREDIT HUSBAND FOR HIS $1,500 MONTHLY PAYMENT.

{¶ 33} Before discussing the specifics of Husband's second assignment of error, we remind the reader that the Magistrate's Decision ordered Husband to make monthly $1,500 "temporary spousal support" payments to Wife for a period of time while the divorce proceedings were pending. The Magistrate's Decision stated that "[t]he $1,500.00 amount includes the debts [Husband] was to pay as stated in [Wife's] financial affidavit"—that is, Husband's portion of the parties' consumer marital debt—"as well as a partial payment towards the [mortgage]." In other words, Wife was to use the $1,500 monthly payments to pay towards the minimum monthly payments on Husband's consumer marital debts and to pay "a partial payment" towards the mortgage. But while the Magistrate's Decision attributed $33,909.76 of consumer marital debt to Wife and $30,081.52 of consumer marital debt to Husband, the Magistrate's Decision did not indicate *how*—in terms of specific dollar values—Wife should divide Husband's monthly $1,500 temporary spousal support payments between her payments towards Husband's consumer marital debt and the mortgage. The Magistrate's Decision left to Wife the decision of how to divide up (or not divide) the temporary spousal support payments, how to apply those payments to Husband's consumer marital debt and the mortgage, and even whether Wife could devote

some portion of the temporary spousal support to Wife's consumer marital debt or Wife's own support.

{¶ 34} Later, in the Divorce Decree, the domestic relations court again divided the parties' consumer marital debt between Husband and Wife. By that time, Wife's consumer marital debts totaled $26,746.52 (down from the $33,909.76 at the time of the Magistrate's Decision) and Husband's consumer marital debts totaled $28,652.51 (down from the $30,081.52 at the time of the Magistrate's Decision). The Divorce Decree did not give Husband any credit for the temporary spousal support payments he had made to Wife during the divorce proceedings.

{¶ 35} In his second assignment of error, Husband contends the domestic relations court erred in its division of consumer marital debt between Wife and Husband because the court failed to credit Husband with the full amount of the "temporary spousal support" payments he was ordered to pay to Wife during the divorce proceedings. He contends that because Wife presumably used some unspecified portion of his monthly $1,500 temporary spousal support payments to make payments on the parties' consumer marital debt, the domestic relations court erred by failing to credit him for his full monthly $1,500 payments when the court divided the remaining consumer marital debt between Husband and Wife.

{¶ 36} The allocation and division of marital property is governed by R.C. 3105.171. While marital property division is specifically addressed by R.C. 3105.171, the division of marital debt is not. *See Smith v. Smith*, 12th Dist. Butler No. CA2001-10-251, 2002-Ohio-4232, ¶ 7. With respect to the division of marital property, R.C. 3105.171(C)(1) provides for an equal division of marital property unless the trial court finds an equal division to be inequitable.

{¶ 37} This court has treated marital debt in the same manner that marital property is treated under R.C. 3105.171(C) and has stated that "the starting point for allocating

marital property is an equal division of both marital assets and marital debts." *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 40. "If equal division of marital assets or marital debts would produce an inequitable result, however, then the marital assets or marital debts should be divided equitably rather than equally." *Id.* We review a trial court's allocation of marital debt for an abuse of discretion. *Id.* at ¶ 41. An abuse of discretion implies that the domestic relations court's decision was unreasonable, arbitrary, or unconscionable. *Sparks v. Sparks*, 12th Dist. Warren No. CA2015-10-095, 2016-Ohio-2896, ¶ 7, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 38} Upon review, we conclude that Husband has not met his burden of demonstrating that the domestic relations court abused its discretion. Husband's argument is based on assumptions regarding facts not in the record. Specifically, Husband did not introduce evidence into the record establishing how, exactly, Wife used or applied Husband's $1,500 monthly temporary spousal support payments. Husband suggests that he does not know how Wife used or applied these payments. For example, Husband states, "*If* Wife applied the $15,000 to the marital debt, even without paying a dime of her own money, it stands to reason the marital debt for which she was responsible would be reduced to $18,909.76…" (Emphasis added.) He then concludes that because the trial court in the Decree allocated a higher amount to Wife, $26,746.52, Wife must not have devoted all of his temporary spousal support payments to marital debt. But Husband also admits that he did not actually pay all of the temporary spousal support payments to Wife that he was ordered to pay, and that he was still obligated to make back payments. Simply put, the record leaves Husband—and this court—with numerous questions about how Wife used Husband's temporary spousal support payments. But Husband did not introduce evidence in the proceedings below that would have related to the argument he now makes. Nor did he argue for additional fact-finding in this appeal.

{¶ 39} We agree with Husband that, if some or all of Husband's temporary spousal support payments were applied to the consumer marital debt by Wife, Husband *may* have been owed a credit when the consumer marital debt was divided by the domestic relations court. However, based on the record before us, we cannot conclude—and Husband has not shown—that Wife made such payments, or that he is owed a credit, much less that the domestic relations court made a reversible error. For these reasons, we overrule Husband's second assignment of error.

### C. Wife's Credit for Mortgage Payments

{¶ 40} Husband's Assignment of Error No. 3 states:

{¶ 41} THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PROVIDING WIFE A CREDIT FOR PAYMENTS MADE TOWARDS THE MORTGAGE WHILE SHE ENJOYED SOLE USE OF THE MARITAL RESIDENCE.

{¶ 42} In his third assignment of error, Husband alleges that the court erred by giving Wife a "credit" for mortgage payments she made while living in the marital home from July 2020 to the date of the closing on Wife's anticipated refinancing of the mortgage. Husband argues that because Wife lived in the residence, and he did not, she was not entitled to "credit" for mortgage payments.

{¶ 43} Husband primarily bases this argument on *Wu v. Li*, 12th Dist. Butler No. CA2012-04-091, 2013-Ohio-527, which he characterizes as holding that a spouse who resides in a marital home during the pendency of a divorce should not be credited with mortgage payments made by that spouse. But Husband overstates the holding of *Wu*. In that case, the wife – who had exclusive use of the residence – paid for the mortgage with her own funds. *Id.* at ¶ 12, 13. She did this after her husband had moved out and after he told her he could no longer pay the mortgage. *Id.* at ¶ 12. The wife thereafter unilaterally paid the mortgage from her own bank account. *Id.* The domestic relations court only

credited the wife for the portion of her mortgage payments that was devoted to paying down principal, and did not credit her for the remainder of her mortgage payments. *Id.* at 4-5.

**{¶ 44}** The wife appealed, arguing the trial court should have credited her for the full amount of the mortgage payments she made, not simply the portion devoted to principal. *Id.* at ¶ 11. We held that the domestic relations court did not abuse its discretion by only crediting the wife for the portion of the mortgage payments devoted to principal. *Id.*

**{¶ 45}** Therefore, *Wu* did not hold, as Husband incorrectly contends, that a spouse who resides in a marital home during the pendency of a divorce should not – as a rule – be credited with mortgage payments made by that spouse. *Wu* was more limited, merely finding no abuse of discretion in the circumstances of that case, where it was the resident wife who paid the mortgage (not the non-resident, non-mortgage-paying husband), who appealed, and where the wife was credited with only the principal portion of the mortgage payments, and was not credited with the mortgage payments in full. *Wu* is distinguishable from this case.

**{¶ 46}** Husband also cites four cases we cited in *Wu*, all but one decided by other districts. All those cases held that domestic relations courts did not abuse their discretion when they failed to credit a spouse who lived in a marital home for the mortgage payments that spouse made after the other spouse moved out of the marital home. *Novello v. Novello*, 7th Dist. Noble No. 10 NO 378, 2011-Ohio-2973, ¶ 19; *Patridge v. Matthews*, 12th Dist. Brown No. CA2000-04-007, 2001 WL 171011, *4 (Feb. 20, 2001); *Galloway v. Khan*, 10th Dist. Franklin No. 06AP-140, 2006-Ohio-6637, ¶ 23-25; *Stacy v. Stacy*, 11th Dist. Ashtabula No. 2004-A-0076, 2005-Ohio-5289, ¶ 35-36. But these cases, like *Wu*, only reviewed the domestic relations courts' decisions for possible abuses of discretion, and did not establish a bright-line rule. Husband has not cited any case or statute establishing that a domestic relations court *must not* credit a spouse for mortgage payments made during the pendency

of the divorce. Nor has Husband offered any analysis of the facts that would suggest the domestic relations court abused its discretion, other than noting his perception that it was unfair to credit wife for mortgage payments when Husband had to pay for his own rent.

{¶ 47} It was Husband's burden to point to controlling legal authority or facts in the record establishing that the domestic relations court erred when it gave Wife a "credit" for mortgage payments she made while living in the marital home from July 2020 to the date of the closing on Wife's anticipated refinancing of the mortgage. Upon our review of Husband's arguments and the record, we find that Husband has not met this burden, and we do not find that the domestic relations court abused its discretion.

{¶ 48} For these reasons, we overrule Husband's third assignment of error.

### III. Conclusion

{¶ 49} For the foregoing reasons, we overrule all of Husband's assignments of error.

{¶ 50} Judgment affirmed.

PIPER, P.J., and S. POWELL, J. concur.